D. & J. JACKSON *vs.* BROOKS.

Previous to the provisions of the revised statutes, requiring a *capias* sued out to prevent the running of the *statute of limitations* to be issued to the sheriff of the *county where the defendant resides,* a capias issued to the sheriff of a county different from that in which the defendant resided was a good commencement of a suit to save the statute.

*It seems,* however, that even previous to these statutory provisions, if the delivery of the writ was accompanied with instructions to the sheriff *not to serve it,* or other facts existed showing that the plaintiff intended that the process should not be served, that the suing out of such writ, under such circumstances, would not save the statute, and consequently that the decision of *Beekman* v. *Satterlee,* 5 *Cowen,* 519, is questioned.

ERROR from the supreme court. Brooks declared against D. & J. Jackson as the *acceptors* of several bills of exchange bearing date 1st April, 1818, payable 12 months after date. The defendants pleaded *actio non accrevit infra sex annos,* &c. The plaintiff *replied* a *capias ad respondendum* sued out and returnable in August, 1824, directed to the sheriff of *Kings* county, and returned by him *non est inventus* as to each defendant; the suing out of a *testatum capias* to the sheriff of *New-York,* returnable in October term, 1824, and regular *continuances* of process down to October term, 1829, when the defendants were brought into court. He also averred that the several writs were sued out and prosecuted *with intent to implead the defendants* upon and for the several causes in the declaration mentioned, and to cause the defendants to appear and upon such appearance to declare against them, and that according to such intent he in October term, 1829, exhibited his bill and declared thereon, &c. The defendants *rejoined* that the plaintiff ought not to be permitted to have or maintain his action, because none of the writs *excepting the first and the last in the replication mentioned were ever issued;* that at the time the *first writ* was issued they the defendants were notoriously residents of the city and county of New-York, their living openly, and that the first writ was issued to the sheriff of the county of *Kings* with intent to deprive them of the benefit of the act of the legislature of this state, entitled " An act for the limitation

of criminal prosecutions and of actions at law," passed April 8, 1801, *and in fraud thereof*, in this, to wit, that it was issued with the intent that the sheriff to whom it was issued should not execute it and arrest the defendants thereon, and this, &c. wherefore, &c. To this rejoinder the plaintiff interposed a *general demurrer*. The demurrer was argued in the supreme court, where judgment was given for the plaintiff; in which court the following opinion was delivered: " The Revised Statutes have no application to this case, and therefore the *rejoinder* cannot be sustained, as it was supposed it might, by the 38th section of the statute relative to the commencement of suits, 2 *R. S.* 299. The terms of the 45th section are explicit that the provisions of the statute shall not apply to ' cases where the right of action shall have accrued, or the right of entry shall exist before the time when this chapter takes effect as a law; but the same shall remain subject to the laws now in force. Independently of the Revised Statutes, the question is disposed of by the case of *Beekman* v. *Satterlee*, 5 *Cowen*, 519."* The defendants sued out a writ of error.

---

* In *Beekman* v. *Satterlee* the plea and replication was similar to those pleadings in this case. The defendant there *rejoined* that the writ first mentioned was not delivered to the sheriff to be executed in manner and form as the plaintiff alleged, and was not sued and prosecuted with intent to implead the defendant upon and for the several supposed causes of action in the declaration mentioned, and to cause him to appear, and upon his appearance, to declare against him for the said several supposed causes of action, &c. in manner, &c.; upon which the plaintiff took issue and went to trial, when it was proved that at the time the attorney for the plaintiff delivered the first capias to the sheriff, he told the sheriff it was done merely to save the statute, that he did not wish it served, and requested him to return it not found; in pursuance of which instructions the sheriff made no effort to serve the writ, and returned it *non est inventus*. The plaintiff had a verdict. The defendant moved for a new trial, which was denied by the court; on which occasion the following opinion was delivered:

" By the Court, WOODWORTH, J. The rejoinder puts in issue two facts: 1. It denies that the writ was delivered to the sheriff to be executed; 2. That it was sued out with intent to implead the defendant upon the supposed causes of action.

" As to the first, the evidence is express that the writ was not delivered to be executed; that is, to be actually served on the defendant. As to the second, although not intended to be served, it was nevertheless issued with intent to implead the defendant in the action. It was to save the statute of

*D. D. Field & R. Sedgwick,* for the plaintiffs in error, adverted to the provisions of the Revised Statutes, enacting that no action shall be deemed to have been commenced, within the meaning of the statute, unless the *capias* is issued *within the time required by law* to the sheriff of the county *in which the defendant usually resides* or *last resided,* in good faith and with intent to be actually served, and that such writ is actually returned, 2 *R. S.* 299, § 38, 39, and then insisted upon the following points :

1. The provisions in the Revised Statutes, respecting the giving instructions to a sheriff not to serve capias, issuing same to a different county from that in which defendant resides, &c. apply to this case ; and if so, decide it.

2. The Revised Statutes have not introduced a new rule in such cases ; they were passed in consequence of the decision

ALBANY,
Dec. 1835.

Jackson
v.
Brooks.

---

limitations, on the ground that process had been sued out before the statute attached ; and being returned *non est,* might be continued down until the defendant appeared, and thus deprive him of the benefit of his plea, should it be interposed. The writ then, although not delivered to be executed, must be considered as delivered with the intent to implead the defendant; and the question arises, whether a delivery of the writ, with directions not to execute it, be a material fact. The usual course at the circuit is, for the jury to find the issue according to the evidence, without regard to materiality. If immaterial, the party against whom the verdict is found would be entitled to an arrest of judgment *non obstante veredicto.* But admitting that this issue should have been found for the defendant, there is no sufficient ground for the court to interfere and set it aside, provided it be immaterial ; because the defendant would derive no benefit if a new trial should be granted. If, however, the issue be material, a new trial should be granted.

" I have not found any case where the fact that the writ was delivered with directions not to execute it, was the point in issue. The general doctrine seems to be this : the plaintiff may reply a *capias* sued out within time and returned *non est inventus* by the sheriff, and show that the process was regularly continued by *vice comes non misit breve,* to the time of declaring. 2 *Saund.* 63, *note* (6). 2 *Salk.* 420. 6 *D. & E.* 617. This is considered a good commencement of the suit, for the purpose of defeating the operation of the statute ; and if so, I do not perceive how the principle can be affected by giving the sheriff directions not to make personal service of the first writ. The defendant is not thereby deprived of any defence that he would have had independent of such instructions given to the officer. The plaintiff may thereby be subjected to greater delay ; but the defendant sustains no injury. To him this fact is not material. I am of opinion that the motion for a new trial be denied."

in *Beekman* v. *Satterlee*, 5 *Cowen*, 519. The law was the same before.

3. The plaintiff below having expressly averred that the first writ was issued, as well as the others, with intent to cause the defendants to appear, and this material allegation being admitted by the demurrer to be false, the defendants below were entitled to judgment.

4. This case differs from *Beekman* v. *Satterlee*, inasmuch as here the fraud of the plaintiff against the law is admitted.

In support of these positions, the counsel cited and commented upon the following cases : 2 *Burr.* 361, 12 *Johns. R.* 181, 17 *id.* 63, 18 *id.* 20, 3 *Paige*, 414, 3 *Wentworth's Pl.* 203, 206, 7 *id.* 343, 1 *Lill. Ent.* 32, 2 *Chitty's Pl.* 606, 1 *Wils.* 141, 3 *Bos. and Pull.* 330, 15 *Johns. R.* 511, 2 *id.* 342, 3 *id.* 42, 8 *Cranch*, 72, 1 *Peters*, 352, 3 *Johns. Cas.* 145, 1 *Caines*, 69, 4 *Cowen*, 168, 8 *id.* 205, 3 *Wend.* 189, 7 *id.* 268.

*B. F. Butler*, (attorney general of the U. S.,) for the defendant in error, insisted, 1. That this case must be decided, not by the new provisions in the Revised Statutes, but by the law existing previous to the reversion, which as to this case is yet the rule of decision ; and 2. That prior to the Revised Statutes, according to the law as well settled in this state, and in England, the rejoinder in this case was not a good answer to the replication. He urged that the very object of the provisions in the Revised Statutes was to *alter* the law from what it had always been understood to be in this state—those provisions being proposed in express reference to the decision in *Beekman* v. *Satterlee*, and accordingly adopted by the legislature. The law in *England* upon this subject, he said, had always been as it was held here previous to the Revised Statutes ; and he cited 2 *Sellon's Pr.* 342, to show that it was there laid down that the statute might be saved by suing out process, although the plaintiff did not intend to proceed hostilely against the defendant. He also cited 12 *Petersdorff's Abr.* 348, and 2 *Saund.* 63, *d.* He further insisted that the rejoinder was bad in tendering an issue upon *an intent of the mind*, which is not allowed in pleading, as it cannot be traversed. 19 *Johns. R.* 372. 9 *Wendell*, 377.

The following opinions were delivered :

ALBANY,
Dec. 1835.

Jackson
v.
Brooks.

By the CHANCELLOR. The question in this case turns upon the sufficiency of the *rejoinder* to the plaintiff's replication, put in in answer to a plea of the statute of limitations.

It is not necessary to inquire whether a *rejoinder* in the form of that put in in this case would be good, under the provisions of the Rvised Statutes, without an averment that the defendants were neither of them in Kings county at the time of the issuing of the first writ, or an allegation that the sheriff was directed not to serve the same. It is evident, from the 45th section of the title of the Revised Statutes relative to the time of commencing actions, 2 *R. S.* 300, § 45, that none of the provisions of the fourth article of that title are applicable to an action which had been commenced, in the manner before required by law, at the time the Revised Statutes went into effect. By that section it is declared, in express terms, that all such actions, and all rights of action or of entry then existing, should remain subject to the laws which were previously in force. It is therefore only necessary to inquire whether this rejoinder would have been good previous to the recent revision of the laws.

It is obvious, from the note of the revisers to the provisions of the Revised Statutes on this subject, that they considered the principle as settled in this state, that the issuing of a writ, or rather the delivering it to a sheriff and obtaining his return thereon, was sufficient to save the statute of limitations, although the sheriff had recived instructions from the plaintiff not to serve the writ. The case of *Beekman & Elmendorf* v. *Satterlee*, 5 *Cowen's R.* 519, decided by Mr. Justice Woodworth, does undoubtedly go that length. But notwithstanding that decision, I cannot think the sheriff was authorized, under his oath of office, to make a false return upon the writ, by stating that the defendant could not be found in his bailiwick, when in truth the only reason why the defendant was not arrested, was because the sheriff had been instructed by the plaintiff not ' to execute the process of the court. The judgment of the court in that case was probably right, upon the ground that the defendant was not authorized, under the

law as it then stood, to tender an issue to the country upon a question which was triable only by the record; and that if the sheriff had improperly returned *non est inventus* upon a writ which, under the instructions of the plaintiffs, he had no right to serve on the defendant, the remedy of the party was by an application to the court to set aside the writ and return as a nullity, so that he could plead *nul tiel record* as to the alleged record of the writ and return set out in the plaintiffs' replication. The issuing of a writ to save the statute of limitations was, in most cases, previous to the Revised Statutes, mere matter of form; but the defendant in that case, I think, had a right at least to insist that the forms of law should be complied with, which certainly were not complied with, if the writ was put into the sheriff's hands with express directions not to serve it—so that the defendant could not compel the plaintiff to proceed or discontinue the suit, even if he had gone to the sheriff and offered to submit to an arrest on the capias before the return day thereof. A writ or an execution thus placed in the hands of a sheriff, and which he has no right to serve without further directions from the plaintiff, is not to be considered as legally issued at all; and if such further directions are not given until the return day thereof, the sheriff has no legal right either to serve it or to return that it could not be served. The suing out of the writ is undoubtedly the commencement of the suit; but the writ is not considered as legally sued out until it is delivered to the sheriff, with authority to him to serve it on the defendant if he can be found within his bailiwick, or is placed in his office, or transmitted to him for the purpose of being served; although it is not absolutely necessary that it should have actually reached the hands of the sheriff, so that the defendant could have been arrested thereon before the expiration of the time limited by the statute for the commencement of the action. Such was the decision of the supreme court in *Ross* v. *Luther*, 4 *Cowen's R.* 158, and in *Burdick* v. *Green*, 18 *Johns. R.* 14. In the last case, Mr. Justice Platt, who delivered the opinion of the court, says: "We do not think that it is indispensably necessary in such cases to prove an actual delivery of the writ to the sheriff, provided it be shown that it was actually made

out and sent to the sheriff or his deputy, by mail or other-
wise, with a *bona fide* and absolute intention of having it serv-
ed." I see, by the marginal note of the reporter, that he sup-
posed the court meant to decide, in that case, that it was not
necessary to show that the writ actually reached the hands
of the sheriff. In this the reporter erred. The learned judge
only meant to say it was not necessary to prove an actual de-
livery of the writ to the sheriff *within the six years.* The con-
text and the facts of the case clearly show that this was his
meaning. The defendant in that case was actually arrested
on the capias before the return day thereof, though it did not
appear that the plaintiff, who received the writ from the attor-
ney before the re-assignment of the note, actually delivered it
to the sheriff until after the 31st of July, when the time limit-
ed by the statute for the commencement of the suit expired.
But the same court had, in another case, refused to substitute
a new capias, in the place of one which had been transmit-
ted to the sheriff by mail and miscarried, as they could not
compel the sheriff to make a false return of *non est inventus*
upon a writ which had not come to his hands before the re-
turn day thereof. *Low* v. *Little*, 17 *Johns. R.* 346.

In the present case, the suit was commenced, so far as the
forms of law were concerned, when the original capias was
delivered to the sheriff of Kings, with authority to him to
arrest the defendants thereon, if they should be found with-
in his bailiwick. The allegation that the general residence
of the defendants was in the city of New-York, is not equiv-
alent to an averment that they were not in fact within the
bailiwick of the sheriff of Kings at the time the writ issued
to that county, or that the plaintiff was aware of the fact
that they resided in another county. In the cases of *Bre-
mion* v. *Evelyn,* 1 *Levintz's R.* 111, and *Hall* v. *Wybourn,
Carth.* 136, it seems to have been conceded by the court,
that a plaintiff might file an *original,* or sue out a *latitat,*
for the mere purpose of saving the statute, although the de-
fendant was out of the realm, or had privilege of Parlia-
ment, so that the process could not be made effectual
against him, except by a continuance thereof after his re-
turn, or when his privilege had expired; and such ap-
pears to have been the practice both in this country and in

ALBANY,
Dec. 1835.

Jackson
v.
Brooks.

England previous to the revolution and down to the time when the Revised Statutes went into operation. This being the law at the time the original capias in this cause was sued out and delivered to the sheriff of Kings county, and the plaintiff having complied with all the necessary forms to continue the process, with a view to declare against the defendants upon the promises laid in his declaration, at a subsequent time, when the defendants should have actually appeared in the suit thus formally commenced, I think it was not competent for them to tender an issue of fact upon the question whether the plaintiff intended to have the writ served on them, when he did no act and gave no instructions to prevent the sheriff from serving the same, if the defendants had been found in his bailiwick at any time before the return day of the capias thus sued out. The result of my examination of the law of this case is, that I have arrived at the conclusion that the suit was formally and legally commenced, for the purpose of saving the statute of limitations from barring the plaintiff's right of action, and that the judgment of the supreme court upon the demurrer was therefore right, and should be affirmed.

By Senator EDWARDS. The suit in this case having been commenced previous to that portion of the Revised Statutes taking effect, which contain the new provisions relative to the commencement of suits for the saving of the statute of limitations, those provisions do not affect this case, as the statute cannot have a retro-active operation. 2 *Paige's Ch. R.* 285. 4 *Wendell,* 206. 8 *id.* 661. 10 *id.* 281, 365. The only question, therefore, is whether the facts alleged in the *rejoinder* and admitted by the demurrer are a sufficient answer to the replication.

The fact that the first *capias* was issued to the sheriff of *Kings,* when the defendants were *notoriously* residents of the city and county of *New-York,* is not sufficient of itself to show that the suit was not properly commenced. There was no prohibition to the issuing of a *capias* into a county different from that in which the defendant resided, to save a demand from the operation of the statute of limitations, until the pro-

visions of the revised statutes went into effect. But the rejoinder avers that the writ was thus issued with the intent to deprive the defendants of the benefit of the statute and in fraud thereof, and with the intent that the sheriff should not serve the process and make the arrest; it is therefore the *quo animo* with which the capias was issued, which is set out as the material point on which to join the issue. Now what effect could the intentions of the plaintiff, not to have the sheriff execute the writ by arresting the defendants upon it, have upon the delivery of the capias or the commencement of the suit, unless that intention was communicated to the sheriff by way of instructions? The writ is the mandate of the court; it directs the officer what to do, and he is bound to obey its requirement, unless otherwise ordered by the plaintiff or his agent; he knows not the intentions of the plaintiff in whose favor it is issued; he is under no obligation to know them or to be governed by them, unless the plaintiff or some one in his behalf communicates them to him by way of directing him in relation to the service of the process. Suppose a capias is delivered by the plaintiff to the sheriff by mistake, and he gives him no directions, and the writ is served and the defendant retains an attorney to defend the suit—can there be a doubt but that the defendant would have a right to consider the suit commenced, and recover his costs? Could the plaintiff excuse himself from paying those costs, by saying he did not intend the writ should be served? Where no directions are given to the sheriff, the intention is to be inferred from the process; and whatever may be the views of the plaintiff uncommunicated to the sheriff at the time the process is delivered, cannot affect it so as to destroy the legal consequences which attach to it by such delivery. The facts averred in the rejoinder do not show any instructions given to the sheriff, at the time it was delivered, not to serve the writ. The delivery was therefore unconditional, and nothing is shown by the rejoinder why the sheriff was not bound to execute it. An unconditional delivery of a capias to an agent or to the sheriff is always a good commencement of a suit. *Lowry* v. *Lawrence*, 1 *Caines' R.* 71. 3 *id.* 133. *Carpenter* v. *Butter-*

*field*, 3 *Johns. Cas.* 145.  2 *Johns. R.* 346.  3 *id.* 42.  *Hogan* v. *Cuyler*, 8 *Cowen*, 205.  *Bronson* v. *Earll*, 17 *Johns. R.* 65.  But if there are any instructions given to the agent who is to deliver it to the sheriff, to postpone the service of the capias at the time of delivery, it then becomes conditional, and the suit is not commenced when the delivery is made. *Burdick* v. *Green*, 18 *Johns. R.* 20.  *Vischer* v. *Gansevoort*, *id.* 496.  *Rose* v. *Luther*, 4 *Cowen*, 162.  Hence it follows, that if instructions given to an agent are the criterion by which to determine whether the delivery is conditional or not, or whether the suit is commenced or not, instructions given to the sheriff must also be the criterion by which to determine whether the delivery is conditional or not, or whether the suit was commenced or not.  A suit therefore could never be commenced when the capias is delivered to the sheriff with directions not to serve it.  The plaintiff has a right to control his process, and if he orders the sheriff not to serve it, but to return it to the clerk's office, it becomes a mere blank, a dead letter in the hands of the sheriff, and incapable of performing any office whatever.  The legal effect of the delivery is destroyed by the instructions given, and the writ is incapable of operating as the commencement of a suit.  Did this cause rest upon the same state of facts as in the case of *Beekman* v. *Satterlee*, 5 *Cowen*, 519, as was supposed by the supreme court, I could not doubt the propriety reversing the judgment under review.  But in my opinion there is no analogy between the two cases; this case wants the important feature, that the plaintiff gave the sheriff instructions at the time he delivered the capias, *not to serve it*. This fact does not appear, nor have we a right to infer it from the pleadings.  We are bound to take the averments precisely as they are, and on the facts presented, decide whether the demurrer is well taken or not.  The rejoinder tenders no material issue; instead of averring material facts and tendering a material issue from which a fraudulent intent might be inferred, it avers an immaterial fact, and presents the intent to defraud as the material point for issue. Such an issue is neither capable of being traversed or tried. An issue cannot be taken on an intent or desire of the mind.  *Van Ness* v. *Hamilton*, 19 *Johns. R.* 372.  *The Peo-*

*ple* v. *The Manhattan Company*, 9 *Wendell*, 377. As the rejoinder, therefore, does not traverse the facts presented by the replication, nor aver new facts tendering an issue upon a material point which the plaintiff could traverse, I am of the opinion the demurrer is well taken, and that the judgment of the supreme court should be affirmed.

By Senator TRACY. There is some difference of opinion whether the *intent* of the plaintiff to deprive the defendants of the benefit of the statute of limitations, as alleged by the rejoinder, is traversable. This averment is nothing more than the allegation that the writ was issued in fraud of the statute ; the latter is the conclusion of the party, and the other is immaterial; but the allegation that the writ was issued with the intent that the sheriff should not execute it, and arrest the defendants, in the connexion in which it stands with the other facts set forth in the rejoinder, was traversable, and if the plaintiff was unwilling to admit it, he should have taken issue and afforded the defendants an opportunity to prove it.

Considering the facts then as established that the writ was issued to a different county from that in which the defendants resided, with an intent that they should not be arrested on it, the question arises whether it was such a commencement of the suit as would save the statute. It is admitted that it would not be, under the existing statute, and that this statute is not applicable to the present case. I think it must also be admitted, that the principle of this case is exactly that decided in *Beekman* v. *Satterlee*, 5 *Cowen*, 519, so that the supreme court, with that decision before them unreversed, could not do otherwise than to decide in favor of the demurrer. It is only necessary, therefore, to determine whether that decision was correct.

What shall be deemed the commencement of a suit has been a fruitful subject of argument and litigation in England and this country ; but for the purpose of saving the statute of limitations, it has been long settled that the issuing of a *capias* to a sheriff was sufficient, and that on his return of *non est*, the suit could be kept alive indefinitely by continuances, down to such a time as the defendant could be arrested. The

entry on the roll of the issuing of fictitious writs from term to term was allowed, as many other fictions of law are said to be, for the advancement of substantial justice. Whether substantial justice is more advanced or impeded by such contrivances to escape the direct results of positive law, is a question which it is now too late to discuss. That this fiction was originally indulged for the purpose of saving the statute, solely in cases where there was an inability to arrest the defendant on the first writ, it would be a reproach to the law to deny. In the old precedents, therefore, which I have found in *Wentworth* and *Lilly*, as well as the more modern ones in *Chitty*, the replication in stating the issuing and return of the first writ, always avers that it was issued with intent to compel the appearance of the defendant at the return of the writ, that the plaintiff might thereupon implead him and declare against him." Why or how the supreme court should decide, in *Beekman* v. *Satterlee*, that it was immaterial whether the party intended that the first writ should be served or not, is what I confess myself unable to comprehend. The very fiction that connects the writ on which the party is arrested with one issued at a different time, and to a different place, is founded on the fact that the intention of the party was exactly the same in respect to one writ as the other. It is this identity of intention, that by aid of the fictitious entry on the roll, makes the identity of the suit. Take away the design of impleading the defendant on the first writ, and you take away the substratum on which the *alias* and *pluries* writs are supposed to be issued; for how can that be supposed done, which it is admitted the party had no motive to do?

But it is said the motive is not really to commence a suit, but to feign to commence one, in order to preclude the defendant from his plea that the action is barred by the statute of limitations. Is it possible that a fiction which is allowed to one party for the purpose of advancing substantial justice, can be converted into the means of depriving the other of a substantial right? "It cannot be endured," says Lord Mansfield, "that a mere form or fiction of law, introduced for the sake of justice, should work a wrong, contrary to the real truth and substance of the thing." Here we come to the naked fact

that a certain process is issued, not to prosecute a suit, but to nullify a statute. This, it seems to me, is not administering law, but perverting it; and the argument that it is promoting justice against law, is one that leads to the subversion of all justice, by destroying the instruments by which alone it can ever be equally administered. The limitation of suits is not only founded in public convenience, but the experience of many years and the declarations of eminent jurists and legislators, prove it to be promotive of real justice between individuals. It is a statute of repose to the public, and of protection to the citizen; quieting perverse litigation, and providing against the changes and losses which time occasions. No wise judge will despise it—no honest one will seek to subvert it.

That it is and always was necessary, for the commencement of a suit, that a process should be sued out with a *bona fide* design of having it served, i. e. of having it the beginning of a suit, is a self-evident proposition. An averment to this effect, I have before observed, is always to be found in the English precedents; and if a practice has been indulged of regarding a writ issued without an expectation of its being served, as a good commencement of a suit, it has always been on the presumption that the party desired and endeavored to have it served. But when this presumption is met by the acknowledgment of the party, that he sent the writ to a county where he knew the defendant was not, and with the intent that the writ should not be served—to regard this, I say, as the commencement of a suit, would be disgraceful to the administration of justice. To borrow another expression from Lord Mansfield, it is " to allow chicane to obstruct right, by the help of a legal fiction, contrary to the truth of the fact." The argument that is found in *Beekman* v. *Satterlee*, and is again pressed into this case, that the defendant is no worse situated because of the plaintiff's preventing the writ being served, than he would be if the service had been prevented by any other cause, is just as good an argument against having the writ issued at all. When the fiction is wholly at the expense of the defendant, it is very ungracious to tell him, that as it don't do him any good, he cannot complain if it be disregarded. Doubtless he would not, if he were to be left where he would be if there were no such fiction : but this is not

proposed. The intimation that it is not the defendant but the plaintiff who loses by the delay of the prosecution, goes to the whole policy of the statute. To conclude, I am satisfied that the decision in *Beekman* v. *Satterlee* was not law, and therefore that the present judgment should be reversed.

On the question being put, *Shall this judgment be reversed?* the members of the court voted as follows:

*In the affirmative*—The PRESIDENT of the Senate, and *Senators* BECKWITH, EDMONDS, FOX, GRIFFIN, LACY, LOOMIS, MAC DONALD, M'DOWELL, SEGER, TRACY, WILLES—12.

*In the negative*—The CHANCELLOR, and *Senators* ARMSTRONG, BEARDSLEY, CROPSEY, DOWNING, EDWARDS, FISK, GANSEVOORT, HALSEY, JONES, LANSING, MACK, MAISON, VAN SCHAICK—14.

Whereupon the judgment of the supreme court was AFFIRMED.