CHARLES E. BURTON, BY NEXT FRIEND, Appellant, v. GEORGE DELEPLAIN ET AL., Respondents.

### Kansas City Court of Appeals, April 11, 1887.

1. EXECUTION—WHAT IS THE ISSUING OF—LIMITATION OF TIME BY THE STATUTE.—The statute allows to the plaintiff ten years in which he may enforce his judgment by *execution*, and no longer. It is a statute of *limitation*. The mere writ, lying in the clerk's office, in no officer's hands who could enforce it, after the ten years have run, ought not to be held the *issuing* of an execution, within the spirit and intent of the statute.

2. —— WHAT ARE WRITS OF—MEANING OF THE TERM "ISSUING," AS APPLIED TO.—Writs of execution are judicial writs issuing *out of* the court where the record is, upon which they are grounded. Tidd's Practice, 998. The very term, "issuing out of a court," implies the sending out of the writ. The word is defined, " to send out ; to deliver by authority ; as to *issue* a writ or precept." Webster's Dictionary. An order, or writ, not *sent out*, could not be regarded as one *issued*. The writ must *go out*. Angell on Limitations, sect. 312.

3. —— DUTY OF CLERK CONCERNING—DUTY OF PLAINTIFF.—It is not the duty of the *clerk* to see that an execution is issued and placed in the hands of the sheriff. The plaintiff has absolute control of his judgment, and may, or may not, have it enforced, at his pleasure. When he comes with the process for execution, after the ten years have expired, he ought to be held to show that he has, *within the time prescribed by law*, done the *affirmative* act on his part, evincive of a *bona fide* purpose to have the process of the court made available.

APPEAL from Dallas Circuit Court, HON. BEN. V. OLTRA, Judge.

*Reversed and remanded.*

The case is stated in the opinion.

T. M. BROWN and AMOS M. SMITH, for the appellant.

I. The court erred in *admitting in evidence* the execution in case of *Lathrop v. Burton & Mulkey.* While the law may perpetuate the force of a judgment and execution until a *sale* can be made, *if the levy has been made* under the execution before the judgment expires, the judgment having expired *before the execution is delivered to the officer*, and before a levy is made, the execution expires with the judgment, and the officer *has no power to make a levy or sale* under such judgment and execution. *Durrett v. Hulse*, 67 Mo. 201; *Bank v. Wills et al.*, 12 Mo. 361.

II. The court erred in *refusing* the instructions numbered three, four, five, six, seven, eight, nine and ten, asked by plaintiff, and *in giving* the instructions numbered one, two, three, four, five, six and seven, asked by defendant.

III. The court erred in overruling motion of plaintiff for new trial.

No brief for the respondents.

PHILIPS, P. J.—Joseph Lathrop, on the twenty-eighth day of July, 1873, recovered judgment in the Bates county circuit court against Joel Burton. An execution on said judgment, bearing date July 14, 1883, was directed to the sheriff of Dallas county for execution. It was not received by the said sheriff, the defendant, Deleplain, until the twenty-second day of August, 1883, almost a month after the expiration of the ten

years after the rendition of the judgment, within which ten years the statute permits the plaintiff to sue out an execution. This writ was levied, by the sheriff, on the first day of September, 1883, on the horse in controversy, as the property of said Joel Burton, which is claimed by the plaintiff, who sues the said sheriff and plaintiff in execution, in trespass. On the trial, the introduction of this writ in evidence by the defendants was objected to by the plaintiff, on the ground that it, in fact, was not issued within ten years after rendition of the judgment. His objection being overruled, and a judgment having been rendered for defendants, the plaintiff prosecutes this appeal.

I. The controlling question arising, on the record before us is, was this execution, in contemplation of law, issued within the ten years after judgment rendered? If it was not, it is void, under the ruling of our supreme court, in *George v. Middough* (62 Mo. 549).

I am surprised not to find a question of so much practical importance, and one so likely to have arisen in the course of practice, definitely settled by the courts. At least, it seems to be a question *res novo* in this state, so far as I am advised.

What is the issuing of an execution? Is it sufficient for the clerk of the court to merely make out the writ in form, attach the seal of the court, and then stick it away in some pigeon hole, without delivering it to the plaintiff, or to the officer charged with its execution? If so, the writ may be made out by the clerk within the last hour of the ten years' time, laid aside by him in a. private drawer or box, and any time afterward, during its life, say, five months after the expiration of the ten years, when the judgment itself would require judicial revival, send it out to the officer, who might then proceed to execute it. "Writs of execution are judicial writs, issuing *out of* the court where the record is, upon which they are grounded." Tidd's Pr. 994–5. Under the common law practice the execution received the

*teste* of the court rendering the judgment, which then went to the prothonotary, if in the common pleas court, for his sealing. Tidd's Pr. 998-9.

For certain purposes, as in case of the death of the defendant after judgment, the *teste* of the writ before the death authorized the execution of it afterward ; and, to save the rights of the plaintiff in execution, the courts, by the doctrine of relation, would permit the *teste* to be antedated. In such case the date of the *teste* was the initial period of the operation of the writ. So, in relation to the matter of issuing executions within a year and a day. If the writ was tested within the year and day, and actually delivered to the officer charged with its execution, and by him returned, it authorized another execution after the year and day. And, yet, under this rule, as applied in modern practice, a writ not actually tested on the day it goes out to the sheriff, can have no operation, by the fiction of relation, so as to authorize a levy against a defendant, dead at the time of the actual issuance. *Holloway v. Johnson*, 7 Ala. 660.

So, at common law, the writ from the date of the *teste* became a lien on the personal property of the defendant. But this whole doctrine was done away with, as an iniquity in practice, by act of parliament, and no such writs thereafter became liens until actually delivered to the sheriff. 29 Car. II , ch. 3, sect. 16. And this statute, in substance, has been generally followed in this country. It was long the statute of this state. And now the legislature has taken a step further, in this wise direction, by providing that no such writs shall be liens upon personal property until actually levied by the officer.

This policy of modern legislation should aid in ascertaining what the legislature meant by saying that an execution might *issue* within ten years after rendition of judgment.

The very term, "issuing out of a court," implies the sending out of the writ. Webster defines it thus :

"To send out; to deliver by authority; as to issue an order from the department of war; to issue a writ or precept." Certainly an order not sent out could hardly be regarded as one issued. Looking at analogous statutes we find the same idea predominant. A suit under the practice act (Rev. Stat., sect 3485) can not be held to be instituted by merely filing a petition in the clerk's office. A writ of summons must be sued out. It is not enough to make out the writ and leave it indefinitely in the clerk's office. The writ must go out. Holmes, J., in *Fenwick v. Gill* (38 Mo. 525), says, the service of the summons, strictly speaking, is the commencement of the suit. I do not think that actual service of the summons is essential under this statute. But the language of the learned judge indicates the mind of the court on this question, where the statute of limitations is concerned.

It has been held by our supreme court, in *Bank v. Wells* (12 Mo. 361), and *Durett v. Hulse* (67 Mo. 201), that execution issued and levied while the judgment is a lien will continue the lien of the judgment until the sale under the execution, although, in the meantime, the lien of the judgment otherwise would have expired. But the writ was delivered to the officer charged with its execution. It would not have accomplished any such office had it remained in the clerk's office until after the lien had expired. Under the statute requiring demands to be exhibited against the estate of a deceased party within a given time, it is held that a suit, instituted in the circuit court on the claim within the prescribed time, is sufficient. But such suit is held to be commenced, for such purpose, only by service within the time. *Bank v. Suman*, 79 Mo. 533.

Angell on Limitations, section 312, says: "The general rule appears to be, in this country, that at the time of suing out the writ the action commences; and either when the writ is delivered to the sheriff, or to his deputy; or when it is sent to either of them with a *bona*

*fide* intention to be served upon the defendant, it is considered to have been issued."

So Chancellor Walworth, who delivered the majority opinion in the somewhat celebrated case of *Jackson v. Brooks* (14 Wend. 654), says : "The suing out the writ is undoubtedly the commencement of the suit ; but the writ is not considered as legally sued out until it is delivered to the sheriff, with authority to him to serve it on the defendant, or is placed in his office, or transmitted to him for the purpose of being served."

So it is held in Indiana that the delivery of the process of summons to the sheriff, for service, is the commencement of the suit. *Evans v. Galloway*, 20 Ind. 479.

In *Morgan v. Taylor* (9 Vroom [N. J.] 319), in discussing the rule above adverted to, respecting the issuing of execution where a party has died after rendition of judgment, the court say : "As between parties to a suit, an execution issued has relation to its test; and writs properly tested in the lifetime of the plaintiff, although actually issued after his death, have commonly been supported and executed. These are cases where writs might properly have been so ante-dated *when actually issued*. The execution in this case was dated of the day on which it was *actually issued*. The statute requires that it should be so."

From this phraseology it is manifest that in the mind of the court the mere attestation of the writ was one thing, and the issuing of it another. And, as under our statute, the fiction of relation back to the attestation has no recognition, the writ only becomes operative, for the purpose of stopping the running of the statute for ten years, from the time of its actually going out for service.

So it was held in *Person's Appeal* (78 Pa. St. 147) : "The setting apart of a pigeon hole in the prothonotary's office, for the use of the sheriff, is a mere matter

of convenience, and the putting of the writ therein is no delivery to him."

It is not the duty of the clerk to see that an execution is issued and placed in the hands of the sheriff. The plaintiff has absolute control of his judgment, and may or may not have it enforced, at his pleasure. *Smith v. Howard*, 41 Vt. 74; *Beedle v. Mead*, 81 Mo. 306. The statute allows to him ten years in which he may, enforce his judgment by execution, and no longer. It is a statute of limitation. When he comes with the process for execution, after the ten years have expired, he ought to be held to show that he has, within the time prescribed by law, done the affirmative act on his part, evincive of a *bona fide* purpose to have the process of the court made available. The mere writ, lying in the clerk's office, in no officer's hands who could enforce it, after the ten years have run, it does seem to me ought not to be held the issuing of an execution, within the spirit and intent of the statute. For certain purposes, and in certain controversies, the date of the *teste* may be evidence of the initial period of the writ. But, as applied to an instance like this, as it is affected by the statute of limitations, I feel constrained, after some hesitancy and much consideration, to hold that sound policy, and the prevention of abuse and the evasion of the real spirit of the statute, demand that the ruling of the circuit court should be disapproved.

Its judgment, with the concurrence of the other judges, is accordingly reversed, and the cause remanded for further proceeding in conformity with this opinion.