JAMES G. W. FENWICK, Respondent, v. NAPOLEON B. GILL, Appellant.

1. *Conveyances—Patent—Description.*—Although there may be repugnancy in the descriptive calls of the land granted by a patent, yet if enough of description remain to identify the location of the land, it will be sufficient.
2. *Confirmation—Grant.*—A grant may be made by law as well as by a patent pursuant to law; and a confirmation by law is as fully, to all intents and purposes, a grant, as if it contained in terms a grant *de novo.* When an act of Congress confirming lands also authorizes patents to issue, the production of the patent is not absolutely necessary for the purpose of showing a grant of title.
3. *Conveyances—Grants by United States—Fraud.*—Courts cannot inquire into the reasons and motives of Congress in passing an act confirming or granting lands to an individual.
4. *Lands—Pre-emptions—Register and Receiver.*—In some cases, where a party has acquired some actual and definite legal right to lands under acts of Congress, the grantee of land under a patent has been declared in equity to be a trustee for the use of another having the better legal right; but the party seeking the relief must bring himself within the provisions of the acts of Congress under which he claims his right. If lands be erroneously reserved from pre-emption or entry by order of the land officers of the government, the party desiring to make a pre-emption or entry may appeal to the Secretary or the President to set aside the reservation, so that he may be permitted to pre-empt or enter the land.
5. *Ejectment—Rents and Profits—Improvements.*—In an action of ejectment, the value of the improvements upon the land, made by the defendant in good faith, may be deducted from the rents and profits.

*Appeal from and Error to Perry Circuit Court.*

This was an action of ejectment for recovery of possession of, 1st, fractional sections 5 and 6, lying north of land claim of G. A. Hamilton, No. 1244, in township 34 N., R. 14 E.; the S.E. fractional quarter and N.W. fractional quarter of fractional section 31 and fractional section 32, T. 35 N., R. 14 E., granted by United States patent dated May 6, 1857: 2d, and the S.W. quarter and fractional N.E. quarter of fractional section 31, T. 35 N., R. 14 E., granted by United States patent dated February 10, 1858.

Suit was commenced by the issue of the writ August 21, 1858. The case was before this court 34 Mo. 94, and was

reversed for a technical error. By consent of parties the pleadings were amended to correct the mistake.

The plaintiff's title was as follows: Act of Congress, Mar. 3, 1857 (11 U. S. Stat. 511), the first section of which confirmed to Martin Fenwick his claim of 500 arpents, described as above, and in patent of May 6, 1857; the second section authorized Martin Fenwick to enter at $1.25 the other lands described as above, and in patent of February 10, 1858. Patent of United States of May 6, 1857. Patent of United States of February 10, 1858. Deed of Martin Fenwick to plaintiff, dated August 6, 1857; acknowledged May 8, 1858. This placed the legal title in the plaintiff.

The amended answer of defendant admitted possession of E. fractional half of S.E. fractional quarter of section 31 and fractional section 32, T. 35 N., R. 14 E.; and E. fractional half of N.E. fractional quarter of fractional section 6, and S.W. fractional quarter of N.E. fractional quarter of section 6 and fractional section 5, all in T. 34 N., R. 14 E., and disclaimed all title and possession to the other lands in the petition described. Defendant had in his possession 150 acres.

To the land admitted to be in defendant's possession defendant denied the plaintiff's title and right of possession. To the lands in his possession, defendant claimed a right of pre-emption under Joseph Fenwick, who had a supposed head or settlement right under the acts of Congress by virtue of possession prior to December, 1803, and to which defendant claimed that he had succeeded. The answer alleged that Joseph Fenwick took possession in 1796 and held it until his death in 1810 and 1815, and that the possession was continued by his widow Chloe until her death in 1834, when it was rented out to tenants by her administrator until 1840; that possession was continued by them until 1849, when defendant came into possession, as he claimed, by contract of purchase, and that he had held the possession since under Joseph Fenwick and his legal representatives; defendant claimed a right of pre-emption. The answer went on to allege that Joseph Fenwick's claim was presented to the Board of Com-

missioners in 1806; that a survey was made of it and filed
with the claim; that the claim was rejected by the old Board;
was presented again to the Board of 1832, and was again re-
jected. It then alleged that Martin Fenwick, who had a claim
under a Spanish grant, presented his claim to the old Board
of Commissioners, and that it was rejected; that said Martin
Fenwick had fraudulently altered the location of his claim
so as to make it cover the location of Joseph Fenwick's claim,
to the fraud and injury of said Joseph and his legal repre-
sentatives; that this claim was presented to the Board of
1832 and rejected; that said Martin Fenwick, by fraudulent
representations, induced the land officers to mark this land
as reserved on the plats; that defendant went to the Land
Office at Jackson to make pre-emption, but on account of the
reservation was refused permission to enter the land; that
said Martin Fenwick, by fraudulent representations and
means, procured the passage of the act of Congress under
which patents were issued to him, and so by fraud prevented
defendant from proving his pre-emption under Joseph Fen-
wick, and by virtue of his own settlement denied the author-
ity of the Land Office to reserve the land from entry and sale,
&c., &c., and prayed that the title might enure to the defend-
ant, and that plaintiff should convey to defendant upon pay-
ing $1.25 per acre. The answer then alleged improvements
made by Joseph Fenwick and his legal representatives, and
prayed compensation for improvements, &c.

At the trial plaintiff presented the act of Congress, patent,
and deed to himself, and proved the rents and profits, and
rested.

The defendant's evidence proved that Joseph Fenwick had
a claim to land as shown by the survey made in this suit;
that he cultivated and possessed it until his death; that his
widow and her family continued to reside on it until her
death in 1834 or 1835; that by her administrator it was
rented to Jacob Coons, and the rents accounted for until final
settlement in 1840; that Coons lived there several years; his
son succeeded him, then Jacob Scudder went into possession,

and Gill succeeded him in possession in 1849. There was no evidence of any conveyance from Coons to Scudder, nor from Scudder to Gill; there was some hearsay testimony that Scudder sold his improvement to Gill.

Fenwick's improvements were on S.E. quarter section 34, T. 35. Evidence was offered to show that Gill, before he got possession of the Fenwick claim from Scudder, had built a cabin and cleared two or three acres on E. half of S.E. fractional quarter section 6, T. 34 N., in 1849.

Martin was a son of Joseph and Chloe Fenwick, and plaintiff, the son of James, was their grandson, and thus one of their heirs and representatives.

Defendant here offered to prove by a witness, that, after building his cabin, he told witness that he was going to the Land Office at Jackson to prove up a pre-emption. Upon plaintiff's objection, the evidence was rejected. At this time Scudder was living on the Fenwick claim.

Defendant offered evidence tending to prove that he went to the Land Office at Jackson, between the years of 1854 and 1858, for the purpose of procuring by pre-emption or entry the lands embraced in the Fenwick reservation, covering parts of sections 34 and 35; that conversation was had upon the subject with the Register, and that it appeared that by order of the General Land Office the land was reserved for the action of Congress.

There was no evidence of record from the Land Offices either of the Register or Receiver showing any affidavits filed by Gill to prove improvements made by him as required by acts of Congress—no evidence of any money deposited with the Receiver; but the evidence merely showed conversations upon the subject. The evidence did not show which of the quarter sections Gill desired to pre-empt—whether that on which he made his own improvements, or those he got from Scudder.

Defendant gave in evidence the claims of Joseph Fenwick for 478½ acres, and of Martin Fenwick for 500 arpents, which appear to have conflicted. These claims were presented to

the Boards of Commissioners, and were rejected, in 1811 and 1835.

Defendant offered evidence to show that Martin Fenwick, in his petitions to Congress, had made false statements relating to his claim and his possession by tenants; and for the purposes of this argument it is admitted that Martin Fenwick had fraudulently altered the description of the location of his grant presented to the old Board December 8, 1807, the plaintiff having admitted the facts the defendant expected to prove by A. McPherson, county surveyor.

Defendant offered testimony to prove the value of the improvements upon the trial, but showed no conveyance to himself, or any title; but it appeared from the evidence that the land cultivated had been cleared by Joseph Fenwick and his legal representatives while they held the Spanish claim.

The plaintiff prayed the court to instruct the jury—

1. That the act of Congress of March 3, 1857, read in evidence by the plaintiff, and the patents issued by the United States to Martin Fenwick, dated May 6, 1857, and February 10, 1858, conveyed to said Fenwick the legal title to the lands described in said patents; and the deed from Martin Fenwick to the plaintiff, read in evidence by the plaintiff, if the same be genuine, vested said legal title in the plaintiff; and if the lands described in said patent and deed be the same described in the plaintiff's petition, the plaintiff is entitled to recover in this action the possession of so much of said lands as the defendant by his answer admits to be in his possession.

2. The defendant has not in his answer and the evidence shown any legal defence to the recovery by the plaintiff of the lands admitted by the answer to be in defendant's possession.

3. The jury will, if their verdict be for the plaintiff, assess as damages the value of the total rents and profits since the commencement of this suit, with all damages sustained by any waste committed by said defendant, and will also find the monthly value of the rents and profits of the land detained.

4. If the defendant claims the land adversely to the plaintiff and those under whom he claims under the right to a pre-emption, by virtue of his possession, then he cannot hold the plaintiff, claiming under Martin Fenwick, as a trustee of the lands granted by the United States to Martin Fenwick, nor of any part thereto.

Which instructions the court gave, except the fourth; to the giving of which, or to the declaration of the law of the case so made for plaintiff by the court, the defendant excepted.

Defendant's instructions:

1. That if the court shall find from the evidence that the lands in controversy were occupied, inhabited and cultivated by Joseph Fenwick under a permit or grant by the proper Spanish authorities prior to and on the 20th day of December, 1803, and that he so continued to occupy and actually inhabited and cultivated the same up to the time of his death subsequent to that period and subsequent to the 12th of April, 1814; and if not subsequent to the 12th of April, 1814, that then his widow Chloe Fenwick still continued to reside thereon, and that he or she did actually inhabit and cultivate said lands in controversy on the 12th day of April, 1814, and long previous thereto, and that the same was not rightfully claimed by any other person; and that after the death of said Joseph said Chloe still continued to reside thereon, inhabit and cultivate the same to the time of her death, and that the legal representatives of the said Joseph and said Chloe have still continued actually to inhabit, cultivate and improve said lands down to and embracing defendant and to the present time, then said Joseph or said Chloe, by virtue of their said inhabitancy, enjoyment and cultivation of said lands as aforesaid, acquired thereby a valid pre-emption right to the same under the statutes of the United States in such cases provided. And if the court shall further find that said lands were never subject to sale by reason of the same having been reserved from sale by the

fraudulent practice and pretended claim of said Martin Fenwick, under whom plaintiff claims, whereby said Chloe or Joseph, or their legal representatives, embracing defendant, were prevented from entering the same, by pre-emption or otherwise, at the proper land office, and they and especially defendant did all in his power to enter on pre-emption the same, and was so prevented by the fraudulent practice of said Martin Fenwick, predecessor of plaintiff, and that by such false and fraudulent practice said Martin Fenwick finally obtained a patent or patents for said land, that their said pre-emption right is still a valid right in defendant, and the court ought to find for defendant, and decree said land claimed to be held by plaintiff in trust for defendant at the minimum government price.

2. That once a right or pre-emption vests in the claimant (or his legal representatives) by his having complied with the law of settlement and cultivation, no fraud, wrong or mistake of others, being land officers or other public functionaries, whereby he is prevented from complying with the formal requisites of law, can defeat said right, and that the same ought to prevail over a patent or other disposition of the land by public authority subsequent thereto, whether obtained by fraud or mistake.

3. That the law views an act as done when the party shall have done all in his power to comply with its formal requisites, but is prevented by the action of the public functionaries or by his adversary ; and if the court then find from the evidence that defendant, as successor of said Joseph Fenwick or said Chloe Fenwick, has so been prevented from establishing his right of pre-emption to said lands before the proper tribunal, that then the court ought to find for the defendant.

4. That if the court shall find that defendant has a vested pre-emption right to said premises, whether as representative of said Joseph or Chloe Fenwick, or by virtue of his own settlement in person, improvement or cultivation thereon, being the head of a family over twenty-one years of age, and a citizen of the United States, and who has inhabited

and improved the same and erected a dwelling thereon, but who has been prevented by means of the fraudulent practices of said Martin Fenwick's predecessors of plaintiff, and by means of said reservation of said lands from sale, and refusal on the part of. the officers of the proper land office to permit defendant to pre-empt or enter said lands, though he made frequent application therefor, said defendant has a valid and subsisting right by pre-emption to said lands in controversy, and the court ought to find for defendant.

5. That if the court should find against defendant on the issues, yet defendant, if the court shall find that he is in possession of the said old survey or grant to Joseph Fenwick in good faith, or of the valid pre-emption claim of said Joseph or Chloe Fenwick, and that said improvements have been made in good faith, she ought to have compensation therefor, and plaintiff enjoined from possession until the same shall be paid.

6. If the court shall believe from the evidence that an outstanding right of pre-emption in the heirs of Joseph Fenwick or Chloe Fenwick under inhabitancy and cultivation of the land in question under act of 12th April, 1814, or any other pre-emption act, and that the lands could not have been entered or pre-empted by them by reason of the reservation thereon continuing to subsist under the fraudulent claim of said Martin Fenwick's predecessor up to the time of his acquiring title from the government, in contravention of such rights, still exists, then the court ought to find for the defendant.

The court took the case under advisement until the May term, and then gave and refused plaintiff's instructions as stated above; and gave the second and fifth of defendant's instructions, and refused the first, third, fourth and sixth.

The court found the value of defendant's improvements, deducted this value from the rents and profits found, and gave judgment for plaintiff for possession and the balance of rents.

Motion for new trial overruled, and appeal by defendant, writ of error by plaintiff.

*Casselberry*, for appellant and defendant in error.

I. The plaintiff must have a cause of action at the time of the commencement of the action; and if he has no such cause, and acquires the same afterwards, his action must fail.

No conveyance can be read in evidence as a title paper which was executed after the commencement of the suit—Pindell v. Mullikin, 1 Black, 585; Johnson v. Jones, id. 224.

II. The court below also erred in charging the defendant rents and profits for both the ground *and the improvements*, instead of rents and profits for the ground alone, without improvements. It is absurd to charge a person for the use of a thing which belongs to him. The correct rule is this:— where the ground belongs to the plaintiff and the improvements belong to the defendant, the plaintiff can only recover for that which the ground would bring without the improvements.

III. It seems probable that the land was confirmed to Joseph Fenwick by the act of Congress of April 12, 1814—3 U. S. Stat. 121.

If the land was not confirmed by the act of 1814, the legal representatives are entitled to a pre-emption under the act of 1814, § 5, and under the act of February 5, 1813—2 U. S. Stat. 797.

By reading all of the evidence in the record, it will be found that there is sufficient proof of a right of pre-emption under the two above acts. The record shows that the claim of Martin Fenwick was about eight or nine miles from the land in dispute, and the Board of Commissioners of 1835 decided that the concession was fraudulently altered so as to include the premises; he, therefore, had no just claim to the land, within the meaning of the acts of 1813 and 1814. The fact that the land officers wrongfully withheld the land from sale or pre-emption did not deprive the defendant of his pre-emption right.

Fenwick v. Gill.

The evidence in the record shows that the defendant, by himself and attorney, offered to enter the land on divers occasions, but the land officers wrongfully refused to let him do so. Where the land officers wrongfully refuse to let a person enter land by pre-emption, the offer of such person to enter is sufficient—Cunningham v. Ashley, 14 How. 377; Bernard's heirs v. Ashley, 18 How. 43; Garland v. Wynn, 20 How. 6; Lindsay v. Hawes, 2 Black, 554.

The third section of the act of Congress of July 9, 1832 (4 U. S. Stat. 567), provides that "from and after the final report of the Recorder and Commissioners, the lands contained in the second class shall be subject to sale as other public lands."

The claim of Martin Fenwick was placed in the second class, which is, according to the act last cited, the class containing the rejected claims.

The final report was made sometime in 1835, and the final act of Congress was passed on the 4th of July, 1836—5 U. S. Stat. 126. The land, therefore, has ever since 1836 been subject to sale in contemplation of law, and has been wrongfully suspended from sale ever since by the land officers. This wrongful suspension of the sale of the land did not deprive the defendant of his pre-emption right whenever the land might be ultimately offered for sale.

IV. As Martin Fenwick was a party to the proceedings before the Board of Commissioners in 1835, he is estopped and bound thereby. The Board most solemnly decided, that the concession was fraudulently altered so as to include the land in dispute, instead of eight or nine miles distant, where it really belonged; so that he had no right, title or claim to the land in dispute to justify the land officers in refusing to permit the defendant to enter the land by pre-emption, under the acts of 1813 and 1814.

V. The answer averred, and the evidence in the record undoubtedly proves, that Martin Fenwick procured the passage of the act, for his benefit, of March 3, 1857 (read in evidence), by false representations to Congress, and by a

forged concession, which was fraudulently altered so as to describe the land in dispute, instead of describing land eight or nine miles off, where it properly belonged, and by this means defrauded the defendant out of his pre-emption right to purchase the land. The court below erred in not considering these facts, which may be seen by reference to the following decisions of the Supreme Court of the United States : Fletcher v. Peck, 6 Cranch, 87 ; U. S. v. Amistad, 15 Pet. 594 ; Stoddard v. Chambers, 2 How. 318.

In Bagnell v. Broderick, 13 Pet. 453, the same judge held that a patent obtained under false suggestions might be avoided at law by the party entitled to the land.

VI. If the defendant is not entitled to a pre-emption under the acts of 1813 and 1814, herein before mentioned, we contend that the evidence in the record shows that he certainly is entitled to a pre-emption under the 10th and 15th sections of the act of Congress of September 4, 1841 (5 U. S. Stat. 455–7), and under the act of Congress of Mar. 3, 1843 (id. 619–21)—Lytle v. Arkansas, 9 How. 314; Cunningham v. Ashley, 14 How. 377 ; U. S. v. Fitzgerald, 15 Pet. 407 ; Bernard's heirs v. Ashley, 18 How. 43 ; Garland v. Wynn, 20 How. 6.; Lindsay v. Hawes, 2 Black, 554 ; Minnesota v. Batchelder, 1 Wal. 109 ; Baker v. Gee, 1 Wal. 333.

The above decisions establish the doctrine, that the wrongful or unlawful refusal of the officers of the government to sell the land does not deprive a pre-emptor of his rights ; and if the government wrongfully dispose of the land, the pre-emptor can hold the grantee of the government as trustee and have the title of the land decreed from the grantee to himself; and that the wrongful suspension of the sale of land does not deprive the pre-emptor of his pre-emption right to purchase the land whenever it might be ultimately offered · for sale.

If, therefore, the land was suspended from sale at the time of the passage of the act of March 3, 1857, the defendant had a right to treat the plaintiff as trustee, and have a decree of the title from the plaintiff to himself for the land described

in the judgment. The tender of the money and the making of a written application is only necessary when the land officers are ready, willing and waiting to receive them, and permit the entry by pre-emption. When a person offers to enter land under the pre-emption law, the presumption is that he is ready and prepared to pay the money, and make the necessary affidavit and written application. This is no more than a reasonable and a fair construction to give to such transactions.

*Whittelsey*, for respondent and plaintiff in error.

I. The act of Congress, and the patents issued in conformity therewith, gave to the plaintiff the legal title to the land —Hooper v. Scheiner, 23 How. (U. S.) 235, and cases cited by defendant's counsel therein.

The reservation of the last section of the act did not make the plaintiff, or his grantor, a trustee for any adverse claimant—Dredge v. Forsyth, 2 Black, (U. S.) 563.

II. The defendant does not show himself entitled to a preemption as the representative of Joseph Fenwick's Spanish claim.

*a.* He does not show any conveyance from any of the heirs of Joseph Fenwick, while plaintiff claims under Martin Fenwick, one of the sons of Joseph and Chloe Fenwick, and is also an heir through his father.

*b.* The claimants under Joseph Fenwick lost their right to enter the Spanish claim by pre-emption, by failing to comply with the terms of the act of Congress of July 9, 1832. They did not prior to the action of the Board of Commission· ers waive their Spanish claim and claim a right of pre-emption within the time limited in the act.

*c.* The evidence shows that Coons and Scudder, under whom Gill claims, were tenants of the Fenwicks, and the rents were paid to them until 1840 ; so that the possession of the tenants enured to the benefit of the Fenwicks, and the tenants could not claim the pre-emption to the Fenwick

claim against their landlords; and that is the pre-emption claimed, the 500 arpents, and not sections and quarters.

III. The defendant does not show himself to have secured any right of pre-emption under the acts of Congress, so as to demand the interposition of a court of equity as against the plaintiff, who has the legal title. He has never complied with the acts of Congress relating to pre-emptions. He did not file with the Register of the Land Office, as required by section 15 of act of September 4, 1841 (5 Stat. U. S. 457), a *written statement* describing the land settled upon, and declaring his intention to claim the benefit of the act, and did not attempt to make his proofs within one year after the passage of that act. The importance of such provisions is seen when it appears that defendant claimed the Fenwick grant and not a quarter section, and that from 1840 to 1854 no attempts were made to file a statement or prove up a claim. He claims under Scudder, who claimed under Coons, and both were tenants of Fenwick; and if they claimed for themselves, they were barred by the limitations of the act of Congress. He does not bring himself within the provisions of the act of Congress of March 2, 1843—5 U. S. Stat. 620.

By section 5, all claimants under the pre-emption laws were required, within three months of the date of the act, or within three months after settlement made, to make known their claims *in writing* to the Register, giving the designation of the tract and the time of settlement; and if they failed to do this, their claim " *was forfeited.*"

It was not intended that the pre-emptors should have the liberty of settling upon public lands, and then be allowed to wait until some other rights intervened before filing their claims, and thus prevent sales and entries and grants.

Defendant, even if claiming under his entry under Scudder in 1849, did not file his claim, nor designate the lands upon which he had settled, so that the proper entries could be made upon the books and plats of the Land Office; and it is only when sued by a claimant under a patent, that he

asks the court to do for him what he should have done for himself.

There is no evidence whatever upon the books of the Land Office, or its plats or papers, that defendant, or those under whom he claims, ever filed any statement in writing, any designation of sections or quarter sections, or made any proofs of settlement. He might have made such proofs by affidavits taken before a magistrate; he was not required to have such affidavits taken by the Register only. He has wholly failed to do what the law required of him.

By examining the cases upon the subject of pre-emptions by the Supreme Court of the United States, it will be seen that in every case the party filed his statement in writing and made his proofs; and then the Register and Receiver having by mistake of the law refused the entry, their judgment was corrected by the courts. But no case can be found where the whole matter was left to parol and verbal evidence, unless it may be that an entry was made by a stranger within the time limited for filing the statement, to-wit, three months. This will apply to all the cases—Lytle v. Arkansas, 9 How. 314; Cunningham v. Ashley, 14 How. 377; U. S. v. Fitzgerald, 15 Pet. 407; Bernard v. Ashley, 18 How. 43; Garland v. Wynn, 20 How. 6; Hooper v. Scheiner, 23 How. 235; Lindsay v. Haines, 2 Black.

Unless the defendant bring himself within the provisions of the acts of Congress he has no standing in court, and the patent is conclusive, for the defendant stands upon a naked possession—Sarpy v. Papin, 7 Mo. 503; Allison v. Hunter, 9 Mo. 741; Barry v. Gamble, 8 Mo. 88; Lewis v. Lewis, 9 Mo. 183; O'Hanlon v. Perry, 9 Mo. 804; Carver v. Johnson, 20 Mo. 108; Bagnell v. Broderick, 13 Pet. 346; Maguire v. Tyler, 1 Black, 195; Willot v. Sanford, 19 How. 79.

IV. The plaintiff was a purchaser from the patentee, without notice of any claim of defendant. The patentee was never in this State, and therefore defendant's possession was no notice to him. Possession is not notice of claim of title, but only evidence of notice.

V. The defendant cannot be allowed to show or prove any fraud in procuring the act of Congress—Fletcher v. Peck, 6 Cranch, 87. Martin Fenwick did not stand in the relation of trustee for defendant, who shows no conveyances from the heirs of Joseph Fenwick, nor was he trustee for them, the heirs; for he had an adverse claim which was confirmed when their claim had been long barred, and the lands had become public and open to entry and sale.

Upon the writ of error, plaintiff's counsel makes the following point:

VI. Upon the record, defendant was not entitled to recover the value of the improvements.

*a.* The statute R. C. 1855, p. 694, only allows a suit for an injunction, to be sustained after a judgment for the recovery of possession.

*b.* It appears from the record that defendant did not enter under any title whatever, for he claims that the lands were government lands; so that he did not enter in good faith, believing that he had a good title, for he shows no title nor conveyances from anybody.

The court should therefore have given judgment for plaintiff for the full amount of the rents and profits found.

HOLMES, Judge, delivered the opinion of the court.

This was an action of ejectment upon a petition in the usual form. The answer admitted possession by the defendant of a portion of the premises sued for, and disclaimed possession of the rest. It contained also a bill in equity, stating a case of equitable jurisdiction, in due form, on the ground of fraud on the part of Martin Fenwick, under whom the plaintiff claimed title, in procuring a reservation of the land in question to be made by order of the Commissioner of the General Land Office, and noted upon the books of the Register and Receiver of the Land Office at Jackson, Missouri, and in procuring an act of Congress to be passed confirming the land to him, and authorizing patents to be issued to him for the lands granted, whereby the defendant had been

Fenwick v. Gill.

prevented from presenting his pre-emption claim and making an entry of the same lands. It stated also that the defendant had had possession of the premises for several years, and had made valuable improvements thereon; and prayed that the plaintiff might be decreed to hold the land in trust for his use, and to convey the same to him on being paid one dollar and a quarter per acre for the land; or if the plaintiff should be allowed to recover, that he should be enjoined from taking possession of the premises until he should pay the amount to be allowed for compensation for his improvements. The court gave the plaintiff judgment for the possession of the premises of which the defendant admitted he was in possession, and (sitting as a jury) assessed the damages and the monthly value thereof. In making this assessment, the court estimated the value of the rents and profits and the value of the improvements, and, deducting the one from the other, found a balance due the plaintiff of one hundred and five dollars, for which he had judgment. Both parties complain of this judgment: the plaintiff, that the value of the improvements was deducted from his damages; and the defendant, that the plaintiff was allowed to recover at all.

The defendant excepted to the admission of one of the patents in evidence, for the reason that the record showed that the petition had been filed before the date of the patent. There was evidently a clerical mistake of one year in the date of filing the petition, but it sufficiently appears otherwise by the record that the suit was actually commenced in 1858 and after the date of the patent. The summons was served on the defendant on the 31st day of October, 1858. Strictly speaking, this was the commencement of the suit. There is nothing in this point.

It was further objected that one of the patents did not cover any part of the lands in controversy. There was evidently a mistake in the description of the township as 35, when it should have been 34; but this call may be rejected for repugnancy, and description enough will still remain to ascer-

34—VOL. XXXVIII.

tain and describe the land with certainty. The description is not only by townships and sections of the public surveys, but also calls expressly for the U. S. survey No. 1244 of Geo. A. Hamilton as the southern boundary of the land granted. By this means the true location could be identified and rendered certain—2 Greenl. Crui. Dig. 307, n. 1. There was no error in admitting the patent.

It is still further objected that one portion of the lands sued for, and included in the judgment, was not covered by the description of either patent; and this appears to be, so far, strictly true. But this portion was embraced within the description contained in the first section of the act of Congress which was in evidence. This section of the act amounted to a legislative grant of the lands therein described. The granting words are " that Martin Fenwick be and is hereby confirmed in his claim of five hundred arpents of land"— going on to describe the several parcels by the sectional subdivisions of the public surveys of lands subject to sale at Jackson, Missouri. The identity of the lands sued for with those granted was amply proved by the evidence. These granting words are the same as those contained in the act of Congress of June 13, 1812, and the case comes clearly within the principle applied to that act, " that a grant may be made by a law as well as by a patent pursuant to law," and " that a confirmation by law is as fully, to all intents and purposes, a grant as if it contained in terms a grant *de novo*"—Strother v. Lucas, 12 Pet. 454 ; Chouteau v. Eckhart, 2 How. (U. S.) 372. The act also authorizes the Commissioner to issue patents ; but, however convenient a patent might be in such case, it cannot be considered as absolutely necessary for the purpose of showing a grant of title. This objection cannot be sustained.

Upon a careful examination of the evidence in reference to the matter of fraud, we have found no sufficient reason for interfering with the judgment of the court below on this part of the case. It is altogether probable that the action of Congress, in making this grant, was based mainly upon the

consideration of the ancient possession of this identical land, which had continued in the family of Joseph Fenwick for several generations, wholly independent of the fact that the old Spanish concession, calling for another river, had been fraudulently altered to make it call for this land on the river Brazeau. Whether or not there was a mistake of the name of the river in the original concession, the fact was that Joseph Fenwick had taken actual possession of this land. The claim had been rejected by the several Boards of Commissioners, but the members of the family still retained possession. Martin Fenwick was one of the heirs. The possession of the administrator of the widow Fenwick, his mother, may properly be considered as the possession of the heirs.

The evidence shows that the defendant intruded upon this prior possession, and, as it would seem, for the very purpose of setting up a pre-emption right to the property, against the more just claims of the heirs of Fenwick, and that he obtained full possession only by buying off a tenant of the Fenwicks. We do not see that there was any fraud in Martin Fenwick procuring a reservation of this land from sale until the action of Congress could be had upon his claim. Nor is there any satisfactory evidence that any fraud at all was practised upon Congress to induce them to pass this act. The fraud suggested seems to consist merely in this altered concession; but there is no reason to believe that this fact, even if unknown, had the least influence with Congress. Nor can this court undertake to inquire into the reasons and motives of Congress in passing this act for his relief—Fletcher v. Peck, 6 Cranch, 87.

There are many cases in which the action of the Registers and Receivers of the land offices, in the matter of pre-emptions and entries, have been examined by the courts, where the claims of different persons came in conflict before them; and there are some cases in which the grantee of land under a patent has been declared in equity to be a trustee for the use of another, having the better right; but this is not one of those cases. In all those cases, it was shown that the

party complaining had acquired some actual and definite legal right. Here no step had been actually taken at the Land Office towards acquiring a right of pre-emption. No notice had been filed within the time limited by law; no affidavit had been made, no proofs offered, and no money paid or tendered. Nothing had been accomplished towards making an entry by right of pre-emption. Inquiry had been made at the Land Office, and the party had been informed that the lands were reserved and were not then subject to pre-emption, and an attorney had been employed to watch the office and ascertain when the reservation should be removed. If not satisfied with the action of the Commissioner in ordering the land to be reserved, he might have appealed to the Secretary, or to the President. Even if reserved without authority of law, the grievance of this party would rather be an injury sounding in damages, than an infringement of any definite and positive legal right acquired in this land. Nor is there any proof of any actual fraud practised upon the Commissioner. The Register and Receiver merely obeyed instructions. The defendant shows no such right, title, or interest, in this property, as can give him any standing in a court of equity. The land had certainly not been sold before the passage of the act of Congress, nor had any other person than the grantee acquired any actual right or title in these lands. The plaintiff stands here upon the grant and his patents, and must be held entitled to recover.

The plaintiff insists that there was error in deducting the value of the improvements from the amount of the rents and profits, and in giving judgment only for the balance as damages. The statute contemplates that the party dispossessed may recover compensation for all improvements made by him in good faith on the lands prior to his having notice of the adverse title—R. C. 1855, p. 694, § 20.

The court below seems to have been so far satisfied of the good faith of the defendant as to allow his claim for compensation. We are not prepared to say it was wholly destitute of merit, nor that it was founded in bad faith rather than in

State ex rel. Vastine v. Judge of St. Louis Prob. Ct.

honestly mistaken views of his legal rights. Under all the circumstances, we are inclined to think the conclusion arrived at by the court below was not far from the real justice of the case. For these reasons the judgment will be affirmed. The other judges concur.