# Commonwealth of Pennsylvania, Appellant, *v.* Central District Telephone Company.

*Telegraph and telephone companies—Corporations—Contracts— Right of telephone company to terminate—Mandamus—Answer—. Demurrer.*

1. In a proceeding against a telephone company for a mandamus to compel the defendant company to furnish its service to the relator under the terms of a contract, the petition averred and set out a written contract, under which defendant rendered service for nine years when it terminated the contract and disconnected the line, in alleged violation of the contract and in unreasonable discrimination against relator. The answer filed admitted the contract, denied any discrimination, and averred that respondent had not for six years furnished service to any other customer under the particular form of contract or at the rate therein provided, and that "after due notice" respondent had terminated relator's contract, and also that the contract "was never intended by the parties to be perpetual in its operation at the option of the relator." The relator demurred to the answer. The contract itself provided for certain contingencies upon which it could be terminated at the option of the respondent, none of which were averred in the answer as the reason for discontinuing the service; provided for a certain rate to be paid during the term of one year, making no provision for an extension beyond that period, but showing an intention that should the line remain connected after the year, the service would continue until another contract was substituted. It provided also that "the subscriber may terminate the contract at any time after the first year by giving thirty days' notice," but contained no provision as to how the company might terminate the contract after the first year. The court below overruled the demurrer and entered judgment against relator. *Held*, no error.

2. Such a contract will be construed to mean that after the first year the contract became one without time limit, which either party could terminate, the subscriber by giving thirty days' notice and the company by giving "reasonable notice."

3. In such a case a construction which tends to perpetuate a discrimination against the company's other subscribers will be avoided, unless required by the language.

Argued Nov. 6, 1913. Appeal, No. 276, Oct. T., 1913,

by plaintiff, from judgment of C. P. Allegheny Co., July T., 1913, No. 300, refusing a mandamus in case of Commonwealth of Pennsylvania, ex rel. Mary McIver v. Central District Telephone Company.   Before FELL, C. J., BROWN, ELKIN, STEWART and MOSCHZISKER, JJ.   Affirmed.

Petition for a mandamus.   Before DAVIS, J.

The opinion of the Supreme Court states the facts.

The court below overruled relator's demurrer to the answer and entered final judgment against her.

*Error assigned* was the decree of the court.

*Carl D. Smith,* for appellant.—Where two or more persons enter into a contract of a continuing nature, without reservation of a power to put an end to the contract by notice or otherwise, one of them cannot by his own act discharge himself from liability, and put an end to the contract without the consent of the other: Robson v. Miss. River Logging Co., 43 Fed. Repr. 364; Superior v. Tel. Co., 122 N. W. Repr. 1023; Llanelly Ry. Co. v. Ry. Co., 45 L. J. Ch. 539; No. Stafford Steel, Iron & Coal Co. v. Ward, L. R. 3 Ex. 172; The Queen v. Eastern Archipelago Co., 1 E. & B. 310.

*James S. Crawford,* of *Patterson, Crawford, Miller & Arensberg,* for appellee.—The contract was terminable by the telephone company: McCullough-Dalzell Crucible Company v. Philadelphia Company, 223 Pa. 336; Coffin v. Landis, 46 Pa. 426; Willcox & Gibbs Sewing Mach. Co. v. Ewing, 141 U. S. 627.

OPINION BY MR. JUSTICE MOSCHZISKER, January 5, 1914:

This case came before the court on petition for mandamus, answer and demurrer; the demurrer was over-

ruled and final judgment entered against the relator, who has appealed.

The petition avers a written agreement between the relator and the respondent telephone company, under which the latter rendered service from 1904 to 1913, when it terminated the contract and disconnected the line; this action of the respondent was alleged to be a violation of its contractual obligations and an unreasonable discrimination against the relator; and the court was asked to compel the telephone company "to furnish and continue to furnish" its service under the terms and conditions of the contract. The answer admits the contract, a copy of which is attached to the pleadings, but denies that the relator's rights thereunder are as stated in the petition; it further denies any discrimination and states that the company is and always has been "ready and willing to furnish its telephone service to the relator at the same rates and upon the same terms" as paid by all other subscribers for a like service. The respondent avers that it had not furnished service to any other of its customers under this particular form of contract "nor at the rates provided therein" for some six years past; that since such contract was made, in 1904, the company had been obliged to established new and revised rates, and that all other contracts in the form of the one possessed by the relator had been cancelled; that "after due notice" respondent had "terminated relator's contract and discontinued its service thereunder" ......"in justice to its other subscribers" and to avoid "unfair and unjust discrimination" against over 63,000 patrons in the Pittsburgh district. In addition, the respondent avers that it has and always has had two classes of subscribers, viz, business and residence, with different forms of contracts applicable to each, and that a higher rate is charged to the former class; that the form of contract which the relator had "was intended to be used in residences only"; that the relator at the present time conducts a grocery business at the address

in question; "that to permit her to receive telephone service for said business purposes at a rate cheaper than the rate charged to others for such business purposes would be unjustly discriminatory"; and finally, the answer avers as a fact that the contract "was never intended by the parties to be perpetual in its operation at the option of the relator."

For present purposes it is not necessary to determine whether or not mandamus is a proper remedy in this case; for, conceding, but not deciding, that it is, we are not convinced that the court below, under the pleadings, erred in refusing the relief prayed for, or in granting judgment against the relator. The answer having been demurred to, all facts properly averred therein must be taken as established, and the only question necessary to be determined is, in view of the established facts, did the telephone company have the legal right to terminate the contract upon "due notice" to the relator? She contends that it had not, for the reason that the contract itself provides for several contingencies upon which it might be terminated, and none of these is averred in the answer as a reason for discontinuing the service. It is argued that the maxim "expressio unius est exclusio alterius" applies and that the contract could not be cancelled by the telephone company except for one of the reasons stated therein. The written agreement provides for a certain rate to be paid by the subscriber "during the term of one year" and makes no express provision for an extension beyond that period. This was a contract for one year; but it contains at least one provision which shows an intention that should the line remain connected after the year, the service would continue under its terms until the substitution of another contract. The agreement provides, "The subscriber may terminate this contract at any time after the first year by giving thirty days' notice in writing"; but no provision as to how the company may terminate the contract "after the first year" appears therein. Our

construction is that after the first year the contract became one without time limit, which either party could terminate, the subscriber by giving thirty days' notice and the company by giving "reasonable notice" (See McCullough-Dalzell Crucible Co. v. Philadelphia Co., 223 Pa. 336, 342). Since the petition does not set up lack of reasonable notice and the answer avers "due notice" to the relator, we must assume that reasonable notice was given, that is,—notice "suitable to the case" (See, 3 Century Dictionary, 1791); and this is all that was required on the part of the company to terminate the contract. All the provisions in the agreement, called to our attention by the relator, which allow cancellation upon the happening of specified contingencies, were for the protection of the company,—that is to say, the subscriber was obligated to pay for and the company to furnish the stipulated service for one year, but the company could terminate the service within that period, in case the subscriber did not pay her bills, or made improper use of the line, or upon its abandonment of the station, or in case of the passage of laws or ordinances which bore upon it adversely in certain defined ways, or in the event that the owner of the premises refused permission for the service, or at the end of any quarter, "should the receipts be deemed insufficient"; and after the first year, the contract became indefinite in its term and subject to cancellation, not only upon the happening of the contingencies therein noted but at any time upon reasonable notice. Of course, this does not mean that the company could annul the contract arbitrarily and refuse all service to the relator; for according to the agreement, upon the establishment of more favorable rates, the subscriber could insist upon a new contract, and under general principles of law, the company was obliged to render her the same service upon like terms that it gave to other persons similarly situated, which the answer states it is and always has been ready to do.

The respondent avers that the present contract is different from all others in the district, and that it constitutes an unlawful discrimination against the company's other customers. Were we to construe the writing as contended for by the relator, it would mean that the discrimination should continue indefinitely, or, at least, until facts arose which would make the particular provisions of the instrument permitting cancellation upon the happening of the stipulated contingencies apply, and that might never be. Such a construction is not required by the language employed and should not be adopted when possible to avoid it; moreover, as before noted, the answer particularly avers that the contract "was never intended by the parties" to be perpetual "at the option of the relator," and yet, that is practically what the appellant contends for.

We conclude that the learned court below did not err when it refused the mandamus.

The assignments of error are overruled and the judgment is affirmed.