Argued May 1, reversed May 16, 1916.

# McMASTER v. RUBY.*

(157 Pac. 782.)

**Quieting Title—Complaint—Sufficiency.**

1. In a suit to quiet title, it is sufficient to allege that the defendant claims an estate or interest in the property adverse to the plaintiff, and call upon him to assert the nature and character of such estate or interest.

**Courts—"Record"—Verity.**

2. The "records" of a court of justice import absolute verity and cannot be contradicted.

> [As to levy of attachment as subject to collateral attack, see note in Ann. Cas. 1913C, 146.]

**Attachment—Affidavit—Sufficiency.**

3. An affidavit for attachment, which states the ultimate facts required by statute is sufficient, and need not allege the probative facts out of which the indebtedness arose.

**Attachment—Affidavit—Sufficiency.**

4. An affidavit for attachment, stating that the indebtedness arose upon express contracts for the direct payment of money, that the contracts were promissory notes for definite amounts, that the said sums are an actual, *bona fide,* existing debt due and owing from defendants to plaintiffs, *held* sufficient.

**Attachment—Writ—Time of Issuance.**

5. Under Section 295, L. O. L., providing that "the plaintiff at the time of issuing the summons or any time afterward may have the property of the defendant attached," a writ of attachment issued before issuance of the summons is a nullity.

**Attachment—"Issued."**

6. A writ of attachment is not "issued" until placed in the hands of the officer for execution.

**Attachment—Writ—Time of Issuance.**

7. A writ of attachment was signed by the clerk, but not delivered to the sheriff until the following day at which time the summons was also placed in the sheriff's hands. *Held,* that the writ was valid against the objection that it issued prior to issuance of the summons.

**Quieting Title—Answer—Description of Property.**

8. In an action to quiet title, an answer, setting forth any description by which the property may be identified by a competent

---

*Upon the question of validity of attachment for insufficiency of affidavits, see note in 35 **L. R. A.** 778.                    Reporter.

surveyor with reasonable certainty, either with or without extrinsic evidence, is sufficient.

**Quieting Title—Answer—Description of Property.**

9. In an action to quiet title, the complaint described the land as "the south half of block one. * * " The answer alleged that this description covered the same land which defendant had attached and which in the writ was described as "lots 3, 4, 5, and 6, in block 1. * * " *Held*, that the answer was good on demurrer.

From Union: John W. Knowles, Judge.

In Banc.    Statement by Mr. Justice Burnett.

This is apparently a suit to quiet title by J. L. McMaster against A. C. Ruby, doing business as A. C. Ruby & Company. The plaintiff says he "is the owner in fee and in the actual possession of the following described real estate in Union County, State of Oregon, to wit, the south half of block 1, in Hannah's Addition to the town of West Union according to the plat of said town now of record in the office of the recorder of conveyances of said Union County, State of Oregon." The complaint concludes with this allegation, which is admitted by the answer:

"That defendant A. C. Ruby, doing business under the firm name of A. C. Ruby & Co., appears of record to have and claims some interest in, title to, or lien upon, the said hereinabove described real estate adverse to the right and title of plaintiff therein."

The prayer is to the effect that the defendant be required to declare the nature of his interest. Further defending, the answer says that on August 30 and 31, 1910, and for a long time afterward, C. D. and Malinda Connally were the owners in fee simple and in the actual possession of the realty mentioned in the complaint by the description there set out. It goes on to give the history of an action at law by Ruby as plaintiff against the Connallys in the Circuit Court of Union County upon two promissory notes for $675

each, made by the latter in favor of the former. It recites that on August 31, 1910, the plaintiff there placed in the hands of the sheriff of Union County a summons in that action. This averment appears therein:

"That at the time of filing said complaint and affidavit and undertaking, the plaintiff herein requested the clerk of said Union County, Oregon, to issue a writ of attachment; that said writ was signed by said clerk on the 30th day of August, 1910; that the sheriff indorsed receipt of said writ on the 31st day of August, 1910; that a copy of said writ and said sheriff's indorsement is marked 'Exhibit C' and is attached to this answer and by reference is incorporated in and made a part hereof."

The affidavit for attachment in that action after the title and venue proceeds as follows:

"I, S. K. Watson, being first duly sworn, say: I am plaintiff's agent in the above-entitled action, and that the defendants are indebted to plaintiff over and above all legal setoffs and counterclaims, upon two express contracts for the direct payment of money, to wit: Two promissory notes, for $675 each. That the payment of said sums has not been secured by any mortgage, lien, or pledge upon real or personal property, and that said sums are an actual, *bona fide,* existing debt, due and owing from defendants to plaintiff, and that the attachment is not sought, or this action prosecuted to hinder, delay, or defraud any creditor or creditors of defendants, or either of them.

"[Signed]    S. K. Watson."

The writ itself shows the date to be as stated in the allegation mentioned above, and indorsed thereon is a memorandum signed by the sheriff, "Received Aug. 31, 1910." In the return upon the writ the sheriff certifies:

"That by virtue of a writ of attachment, issued out of the Circuit Court of the State of Oregon, for Union

County, on the 31st day of August, A. D. 1910, in a cause therein pending, wherein A. C. Ruby * * was plaintiff and C. D. Connally and Malinda Connally, defendants, said writ being in favor of said plaintiff and against the property of said defendants, and directed to me, the said sheriff of Union County, I did on the 31st day of August, A. D. 1910, at the instance of the above-named plaintiff, attach the following described real property of the within named defendants, C. D. Connally and Malinda Connally, to wit: Lots 3, 4, 5, and 6, in block 1 of Hannah's Addition to Union. * * In witness whereof I have hereunto set my hand this 31st day of August, A. D. 1910, at 9:40 o'clock A. M.''

This document was signed by the sheriff, by his deputy. There also appears the usual recorded certificate of attachment describing the property as lots 3, 4, 5 and 6, in block 1 of Hannah's Addition to Union. The complaint traces the history of that action to judgment with an order to sell the realty under that description. In the instant suit the answer avers:

''That on the 31st day of August, 1910, the sheriff of Union County, Oregon, attached the property of the said C. D. Connally and Malinda Connally described hereinabove, and on said day, at the hour of 9:40 o'clock A. M., of said day, certified to said attachment; that said sheriff on said 31st day of August, 1910, duly made his return on said attachment; that said certificate and return are attached hereto, and marked Exhibits 'D' and 'E,' respectively, and made a part hereof; that lots 3, 4, 5 and 6, in block 1, of Hannah's Addition to Union, all being in Union County, Oregon, described in said sheriff's certificate and return, are the same property that is described in plaintiff's complaint herein and in defendant's answer hereinabove; that there is only one Hannah's Addition in Union County, Oregon, or in or near the town or city of Union, or West Union, in Union County, Oregon; that there is only one plat of said

Hannah's Addition or of any Hannah's Addition of record in the office of the recorder of conveyances of said Union County, Oregon.''

The Circuit Court sustained the plaintiff's general demurrer to the answer, and, as the defendant refused to plead further, gave a decree according to the prayer of the complaint quieting the title of the plaintiff in the plat in question. The defendant appeals.

REVERSED AND REMANDED.

For appellant there was a brief and an oral argument by *Mr. Charles Albert Small.*

For respondent there was a brief and an oral argument by *Mr. James D. Slater.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. As stated in *O'Hara* v. *Parker,* 27 Or. 156, 164 (39 Pac. 1004, 1005):

In a suit to quiet title ''it is sufficient to allege that the defendant claims an estate or interest in the property adverse to the plaintiff, and call upon him to assert the nature and character of such adverse estate or interest, and subject it to a judicial investigation, that the right of possession between them may be forever quieted.''

2. The following is set down in 7 Words and Phrases, page 6008:

''In the language of Lord Coke, 'records' are memorials or remembrances in rolls or parchments of the proceedings and acts of a court of justice, which hath power to hold plea according to the course of the common law, and are of such incontrollable credit and verity that they admit no averment, plea or proof to the contrary (citing authorities). The principle on which the law regards records as of such absolute ver-

ity that they cannot be contradicted is obvious. They are memorials of the end of strife, when a dispute has been settled by the judgment of the court. If it were otherwise, it would be difficult to see where litigation would end."

It would seem that in stating that the defendant appears of record to have some interest in, title to, or lien upon, the realty which the plaintiff claims, the latter has himself taken up the task he would impose upon the former and has exhibited an unimpeachable claim on the part of the defendant; for if it is of record it imports absolute verity unless something else is shown. Of course, a record may be impeached by direct attack; but it is elementary that it is immune from collateral assault. We may well doubt, therefore, whether the complaint states facts sufficient to constitute a cause of suit.

3. Passing this, however, we address ourselves to the demurrer to the answer, remembering that in our quest we must consider as admitted all its allegations which are well pleaded. Condensing it to its lowest terms, the plaintiff's attack upon the validity of the defendant's lien by virtue of his attachment is referable to three points: (1) Insufficiency of the affidavit for attachment; (2) that the writ of attachment was issued before the summons in the action; and (3) that the return of the attachment describes a property different from that which the plaintiff claims to own. In the early case of *Crawford* v. *Roberts,* 8 Or. 324, it was stated in the syllabus that:

"An affidavit for an attachment need not state the probative facts out of which the indebtedness of the defendant arose, but it is sufficient if the ultimate facts required by the statute be shown as the basis of the writ."

80 Or.—31

4. The record of that case reveals that, aside from the dates and amount involved, the affidavit was almost identical in its terms with the one questioned in the present instance. The authority of that precedent has never been doubted since. The affidavit here states the indebtedness of the defendants to the plaintiff upon two express contracts for the direct payment of money, to wit, two promissory notes for $675 each. It further says "that said sums are an actual, *bona fide*, existing debt, due and owing from defendants to plaintiff": See, also, 6 C. J., pp. 110, 253. The affidavit is effectual for the purpose in view.

5. It is stated in Section 295, L. O. L., that:

"The plaintiff, at the time of issuing the summons, or any time afterward, may have the property of the defendant attached."

On the doctrine of *stare decisis,* as established by *White* v. *Johnson,* 27 Or. 282, 297 (40 Pac. 511, 50 Am. St. Rep. 726), we must hold that a writ of attachment issued before the issuance of the summons is a nullity, although if the question were new we might well say that it is only the levy of the writ of attachment which is forbidden to take place before sending out the summons. It is said that when or at any time after the summons is issued, the plaintiff may have the property of the defendant attached. The issuance of the writ, however, is not an attachment. Merely placing it in the hands of the sheriff does not in any wise prejudice the property or rights of the defendant. Those are involved only when and not until the writ is levied. In the light of precedent, however, the question on this point must be determined by the decision about when the summons is issued and the relative order of time of the issuance of the writ. In *White* v. *Johnson,* 27

Or. 282, 297 (40 Pac. 511, 50 Am. St. Rep. 726), it is said:

"A summons may be said to have issued in an action commenced in the Circuit or County Courts of this state when it is made out and signed by the plaintiff or his attorney, and placed in the hands of the sheriff, with the intention that it be served upon the defendant. It is difficult to see how anything less than this would constitute an issuance of a summons. The statute requires that the summons shall be served by the sheriff, and without a delivery to him for service such instrument is not yet endowed with vitality for any purpose."

6, 7. The opinion goes on to hold that the time when the summons was issued is fixed by the sheriff's indorsement upon it stating the date of its delivery to him. In the present juncture the sheriff has inscribed upon the summons August 31, 1910, as the date upon which he received that document. He has made the same memorandum upon the writ of attachment and has reiterated the statement in his return and certificate of attachment. All this is admitted because it appears in detail in the answer which is attacked only by demurrer. The plaintiff, however, contends that the date attached to the writ by the clerk fixed the time of its issuance. He ignores the principle applied to the issuance of a summons establishing it as the date upon which the sheriff received it. He would apply one rule to the summons and another to the writ. If the issuance of the writ of attachment is not to be controlled by the date it comes into the possession of the sheriff, neither should the issuance of the summons be determined by that canon. If the writ is "issued," within the meaning of the law, when its author, the clerk, seals and signs it, irrespective of the time it thereafter reaches the custody of the sheriff, then in this collateral attack upon the proceeding and

in aid of the transactions of a court of general jurisdiction, we may disregard the date of reception indorsed upon the summons by the sheriff, and, in the absence of anything in the record to the contrary, presume that the attorney for the plaintiff made out and signed the summons before or at least at the time the clerk prepared and signed the writ. If signing and dating an instrument is issuing as to one paper, it is as to the other. The better reasoning is that neither of them is issued in the legal sense until lodged in the hands of someone authorized to enforce or serve it. Before that happens, each is inert and ineffectual for any purpose in law. As the plaintiff, or his attorney, does not accomplish anything toward issuing the summons by signing it and still keeping it in his possession, so the writ of attachment is not issued as long as it remains in the hands of the clerk, or logically not until the sheriff takes control of it. The following authorities teach the doctrine indicated that it is not until the writ is lodged in the hands of the executive officer that it can be said to have been "issued": *Pease v. Ritchie*, 132 Ill. 638 (24 N. E. 433, 8 L. R. A. 566); *First Nat. Bank* v. *Dwight*, 83 Mich. 189 (47 N. W. 111); *Burton* v. *Deleplain*, 25 Mo. App. 376; *Wheeler & Wilson Mfg. Co.* v. *Teetzlaff*, 53 Wis. 211, 216 (10 N. W. 155); *Oskaloosa Cigar Co.* v. *Iowa Cent. Ry. Co.* (Iowa), 89 N. W. 1065; *Webster* v. *Sharpe*, 116 N. C. 466 (21 S. E. 912); *Blain* v. *Blain*, 45 Vt. 538, 541; *Marshall* v. *Matson*, 171 Ind. 238 (86 N. E. 339, 342); *Webster Mfg. Co.* v. *Penrod*, 103 Minn. 69 (114 N. W. 257); *People ex rel.* v. *Gebhardt*, 154 Mich. 504 (118 N. W. 16); *Barth* v. *Burnham*, 105 Wis. 548 (81 N. W. 809); *Southern Ry. Co.* v. *Dickens*, 163 Ala. 114 (50 South. 109). We hold, therefore, that within the meaning of Section 295, L. O. L., the writ of attach-

ment was issued at least at the time of the issuance of the summons, and hence is valid.

8, 9. Concerning the description of the property involved, it will be noted that the plaintiff claims to own "the south half of block 1 in Hannah's Addition to West Union," while the return to the writ of attachment under which the defendant claims describes the holding as "lots 3, 4, 5 and 6 in block 1 of Hannah's Addition to Union." The defendant alleges specifically that these two descriptions cover the same tract. In this suit to quiet title, where the rules of evidence before the chancellor are as liberal as the precedents hereinafter cited would indicate, we cannot say as a matter of law that the defendant would be forbidden to prove this allegation. If, in fact, the same tract of land has been called by different names and the defendant is prior in time with his attachment, judgment and order of sale of the same, he is prior in right; for it is conceded that the plaintiff derived title from the Connallys long after the levy of the attachment. The descriptions mentioned are conventional designations, and we know of no law which would compel everyone afterward to call a certain tract "Black Acre" because that name had been bestowed upon it by some former owner. In proving a description of property, this court, in *House* v. *Jackson,* 24 Or. 89 (32 Pac. 1027), laid down the rule that:

"Any description by which the property might be identified by a competent surveyor with reasonable certainty, either with or without the aid of extrinsic evidence, is sufficient."

Other precedents on this subject are the following: *Bogard* v. *Barhan,* 52 Or. 121 (96 Pac. 673, 132 Am. St. Rep. 676); *Flegel* v. *Dowling,* 54 Or. 40 (102 Pac. 178, 135 Am. St. Rep. 812, 19 Ann. Cas. 1159, note);

*St. Dennis* v. *Harras,* 55 Or. 379 (105 Pac. 246, 106 Pac. 789); *Burns* v. *Witter,* 56 Or. 368 (108 Pac. 129); *White* v. *Proebstel,* 65 Or. 11 (130 Pac. 732); *Smith* v. *McDuffee,* 72 Or. 276 (142 Pac. 558, 143 Pac. 929); *Talbot* v. *Joseph,* 79 Or. 308 (155 Pac. 184).

The answer does state facts sufficient to constitute a defense to the complaint. On the face of the defendant's plea we are not authorized to say that as a matter of law he is unable or forbidden to prove the allegation of the identity of the land, although it is called by different names or descriptions.

The decree of the Circuit Court is reversed and the cause remanded for further proceedings.

Reversed and Remanded.

Mr. Justice Eakin absent.