STATE ex rel. BROOKS, Respondent, *v.* COOK, Appellant.

(No. 6,404.)

(Submitted March 28, 1929. Decided April 19, 1929.)

[276 Pac. 958.]

480

*Mr. Wellington D. Rankin* and *Mr. Arthur P. Acher,* for Appellant, submitted a brief; *Mr. Rankin* argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. T. H. McDonald,* Assistant Attorney General, for Respondent, submitted a brief; *Mr. L. V. Ketter,* Assistant Attorney General, argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The defendant, Andrew B. Cook, was, at all times hereinafter mentioned, the owner of a two-story frame dwelling-

house fronting on Park Avenue in a residential district of the city of Helena, and of certain sheds to the rear thereof, which buildings were more than forty years old and had, in recent years, been permitted to fall into disrepair.

The relator, William G. Brooks, is the state fire marshal, duly appointed and acting pursuant to authority vested in him by the provisions of Chapter 209, Part III, of the Political Code of 1921, to inspect and, in proper cases, to condemn, any building which "for want of proper repairs, by reason of age, dilapidated condition * * * or for any other cause or reason is especially liable to fire," and which "is so situated as to endanger other buildings and property," as a public nuisance and to order the condition remedied, but if the order is not obeyed, the fire marshal may not summarily proceed and can only "maintain an action" against the owner "for the purpose of procuring an order" from the court, along the same lines as the order given by him. (Sec. 2753, Rev. Codes 1921.)

At some time prior to May 15, 1926, the roof and rear walls of the Cook building, and a shed connected therewith, were partially destroyed by fire and, after an inspection of the interior and exterior thereof, on that date, the fire marshal served upon the defendant a written notice declaring the building a fire hazard and dangerous to surrounding property, and ordering it torn down and removed within twenty days. This notice was ignored by the defendant and on February 28, 1927, the county attorney of Lewis and Clark county, on behalf of the fire marshal, filed complaint herein, alleging that the building in question was in a dilapidated condition and especially liable to fire, so situated as to endanger property within fifty feet of it, and that it could not be repaired. Nevertheless the prayer of the complaint is that the building be declared a public nuisance and either repaired to remedy its dangerous condition, or torn down and removed.

The filing of this complaint is in strict compliance with the provisions of section 2753 above, which section further provides that "upon the filing of the complaint in such a proceeding in the district court, the judge thereof shall issue an

order to show cause, directed to the owner, * * * requiring him to be and appear before such court at a time and place specified, not less than five days, nor more then ten days from the date of such order, then and there to show cause why such building or structure should not be repaired, torn down or demolished, and all dangerous conditions removed." Upon the filing of the complaint the district judge made such an order, directed to Mr. Cook, requiring him to appear at the courtroom in Helena on March 10, 1927. The order follows the language of the statute and closes with the direction that a certified copy of the complaint and the order be personally served upon the defendant at least five days prior to the time set for the hearing. This order was placed in the hands of the sheriff for service, and on March 1, 1927, return was made that defendant could not be found in the county; it was then placed in the hands of the sheriff of Broadwater county, the place of residence of defendant, and a like return was made on March 3, 1927.

The record does not disclose that the order was ever served upon Mr. Cook, but on October 14, 1927, he made general appearance by filing a demurrer to the complaint, which was overruled, and thereafter answered, denying the allegation that the building was a fire hazard and a public nuisance and setting up as a special defense that, on the grounds hereinafter considered, the Act under which the fire marshal and the court proceeded was unconstitutional.

The matter was finally brought on for trial in April, 1928, and, on the evidence submitted, the court found the defendant to be the owner of the building and that the building "was and is a public nuisance," in a dilapidated condition, especially liable to fire, and so situated as to endanger other property and buildings in the vicinity, and that it cannot be repaired. On these findings, judgment was entered requiring the defendant to tear the building down within twenty days after personal service upon him of a certified copy of the order and decree. Defendant moved for a new trial, which motion was denied. He has appealed from the judgment and, by

appropriate specifications of error, raises the question of the constitutionality of the Act in question in the particulars herein discussed, and of the sufficiency of the evidence adduced to support the judgment.

1. Defendant contends that the Act in its entirety is ▮▮▮▮▮ violative of section 36, Article V of our Constitution, in that it attempts to delegate to the fire marshal municipal functions lodged in the city.

The constitutional prohibition is: "The legislative assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes, or to perform any municipal function whatever."

The legislature has, by section 5039, Revised Codes 1921, granted to cities and towns certain legislative powers, among which we find that "for the purpose of guarding against fire" such municipalities may "prescribe the limits within which wooden or combustible buildings must not be erected, placed or repaired, and to establish fire limits within the city or town (subd. 26) ; to establish and maintain fire departments (27) and equipment (28), and "to inspect chimneys, flues, fireplaces, stovepipes, ruins, structures and boilers, and, when dangerous, to require the same to be removed or put in order, and prohibit the use thereof until safe." (29) These provisions have been in effect since 1889.

Pursuant to the power thus given, the city of Helena, in 1908, enacted ordinances now appearing as sections 619 to 623, inclusive, of the ordinances of the city, establishing fire limits within the city and providing for inspection and condemnation of frame buildings within such limits when damaged by fire or decay in excess of thirty-three and one-third per cent of the value of such buildings, the facts to be determined by a board of arbitration. These ordinances provide that, on findings against the owner of such a building, the city building inspector shall cause the removal of the building and it shall be unlawful to repair it. The subject matter of this

action is within the fire limits established by the city of Helena, and it is admitted that no proceedings have been had under the ordinances above mentioned.

Measures for the protection of life and property against fire hazards fall within the police power of the state, which power may either be exercised by the state through proper machinery or delegated for local administration to cities or towns. (*York* v. *Hargadine*, 142 Minn. 219, 3 A. L. R. 1627, 171 N. W. 773.)

It will be noted that no one of the functions of a city expressly mentioned in the constitutional prohibition, above, falls under the head of police power and, if the prohibition operates to prevent the legislature from authorizing a state fire marshal to act within the limits of a city, it must be by virtue of the general clause "or to perform any municipal function whatever."

The functions of local self-government are dual in their nature, including two classes of powers, two classes of rights, and two classes of duties—the one governmental, political and public, as an agency of the state, the other proprietary, private and semi-private, or, merely municipal, exercised purely for its own benefit (43 C. J. 179–182). "This distinction as to the different capacities in which municipal corporations act is important and is so well grounded as to be a part of the law of the land." (*Milwaukee* v. *Raulf*, 164 Wis. 172, 159 N. W. 819.) This distinction is recognized in *Griffith* v. *City of Butte*, 72 Mont. 552, 234 Pac. 829, wherein the two classes of functions are defined as follows: "(1) Governmental, which are those conferred upon such a corporation as a local agency of prescribed and limited jurisdiction to be employed in administering the affairs of the state and promoting public welfare generally; and (2) municipal, being those granted for the special benefit and advantage of the urban community embraced within the corporate boundaries." Acts authorized under the police power, eminent domain, the administration of justice and the maintenance of fire protection, fall within governmental functions, while the care of streets and alleys,

the erection and maintenance of local improvements and the care and protection of city property, are purely municipal functions. (43 C. J. 183.)

It is, therefore, apparent that all of the powers specifically enumerated in the above constitutional prohibition are concerned with purely municipal functions as such, and, under the rule of construction known as *ejusdem generis,* the general words "any municipal function whatever" must be limited to functions of the same kind as those enumerated (*Thaanum v. Bynum Irr. District,* 72 Mont. 221, 232 Pac. 528), if, indeed, the very use of the term "municipal function" does not demonstrate the intention of the framers of the Constitution to prohibit legislative delegation of power to others than municipal officers, only "to supervise or interfere with" those functions having to do solely with local self-government—"municipal functions."

Where there is room for concurrent jurisdiction, there is no objection to the state and a municipality legislating upon the same subject, so long as the municipal ordinance does not conflict with the state law. (43 C. J. 214, and cases cited; *Carey* v. *Guest,* 78 Mont. 415, 258 Pac. 236.)

Proper protection from loss of life or property by fire is a matter of vital interest to the public at large outside of, as well as within, the city or town where fire hazards may exist, and in this respect the fire marshal, appointed by authority of the legislative enactment above referred to, "possesses much the same power and in many respects has the same duty to perform, as have the members of the state board of health, the state veterinarian, and the state pure food commissioner, in regard to the protection of the public from impure food and disease, infected cattle and premises and goods." (*Runge* v. *Glerum,* 37 N. D. 618, 164 N. W. 284.)

The contention that the Act in question is unconstitutional on the grounds stated cannot be maintained.

The authorities cited by defendant in support of his contention (*State* v. *Denny,* 118 Ind. 449, 4 L. R. A. 65, 21 N. E. 274, and *State ex rel. Attorney General* v. *Moores,* 55 Neb.

486, 41 L. R. A. 624, 76 N. W. 175), are not in point, as in each case the court has under consideration an Act providing for state appointment of fire and police commissioners within cities, thus depriving the inhabitants of local self-government; while the Act here under consideration does not attempt to interfere with local fire departments or their management.

2. Counsel for defendant contends that, if the Act confers ██ authority upon the state fire marshal, it is, nevertheless unconstitutional in that it does not require *service* of the order to show cause, issued by the court, upon the defendant in such an action, but that, in strict compliance with the statute, if the fire marshal saw fit to do so, he could proceed to make a showing before the court, without service of the order, and secure an order of condemnation and destruction of the building, in violation of the ''due process of law'' provision of the Constitution.

Counsel does not, of course, contend that such a situation is shown by the record, but must concede that defendant here had ample notice and was accorded a full hearing and is in no position to urge that the notice was not, in fact, served upon him. Counsel's position is that, in this respect, the statute before us is faulty in the same manner, and to the same extent, as was the enactment attempting to authorize the Railroad Commission to order a railway company to install a ''spur track,'' condemned in our decision in *Chicago, Milwaukee & St. P. Ry. Co.* v. *Railroad Commissioners,* 76 Mont. 305, 247 Pac. 162, wherein it is held that ''notice and hearing'' must be given before a party can be deprived of his property, and that ''where the taking of property is involved, extraofficial or casual notice of a hearing granted as a matter of favor or discretion, cannot be deemed a substitute for the due process of law the Constitution requires,'' and that ''the constitutional validity of a law is to be tested, not by what has been done under it, but by what may be done.''

We cannot agree with the position taken by counsel. It is true that section 2753, above, does not, in terms, require the service of the order to show cause required to be ''issued''

by the court, but such order is the "process," as that term is defined by section 4773, Revised Codes 1921, by which the court seeks to acquire jurisdiction to determine the issues tendered by the complaint filed. Ordinarily, no order requiring the destruction of property could be made unless the court first acquired jurisdiction by the service of notice and the holding of a hearing pursuant thereto, and a statute which does not provide therefor, even though the same may be given as "a matter of favor or discretion" on the part of the presiding official or board, violates the "due process" provision of the Constitution (*Chicago, Milwaukee & St. Paul Ry. Co.* v. *Railroad Commissioners,* above; *State* v. *Keller,* 108 Neb. 742, 25 A. L. R. 115, 189 N. W. 374; *City of Brooklyn* v. *Franz,* 87 Hun, 54, 33 N. Y. Supp. 869). We use the term "ordinarily," in this connection for the purpose of reserving the question, not here presented, as to whether or not action might be taken without notice or hearing in a case wherein the necessity was clearly urgent and no owner or agent in charge of a fire hazard of the nature described in the statute could be found.

The statute under consideration differs from that condemned in the case of *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Railroad Commissioners,* above, in that there the legislature attempted to vest in the commission power to order a spur track put in after such investigation of necessity as the board saw fit to make, and thus authorized the board to make such an order without notice or hearing; as such action could have been taken under the statute, it was held immaterial that the board had, in fairness or in an attempt to cure the defect in the law, accorded notice and hearing.

Under the statute here considered, as above quoted, the judge is required to "issue" the court process and make it returnable for a hearing and, whether or not the statute requires service of that process depends upon the construction of the statute from a viewpoint of legislative intent and the meaning of the word "issue." This word is used in divers connections, but when used with reference to the promulgation

of the process of a court, whether that process be a summons, a writ or an order, it means "to send forth" officially, by authority of and under sanction of the court; the clerk of the court or the judge thereof does not "issue" process merely by signing his name thereto, but only when he sends it forth for service upon the person to whom it is directed (*Ferguson* v. *Estes & Alexander* (Tex. Civ. App.), 214 S. W. 465; *In re Johns' Estate*, 253 Pa. 532, 98 Atl. 719; *Houston* v. *Thornton*, 122 N. C. 365, 65 Am. St. Rep. 699, 29 S. E. 827; *McMasters* v. *Ruby*, 80 Or. 476, 157 Pac. 782; *Webster Mfg. Co.* v. *Penrod*, 103 Minn. 69, 114 N. W. 257; *First Nat. Bank* v. *Dwight*, 83 Mich. 189, 47 N. W. 111). Certain of the cases hold that process is not "issued" until it is actually placed in the hands of the proper officer for service, while others hold that it is issued when delivered to the person suing it out or in charge of the proceeding or action for delivery to the proper officer.

Our statute, therefore, requires that process be sent forth for service in such manner that it will reach the hands of an officer having authority to serve it, and with this procedure the fire marshal cannot interfere; it does not rest with him, as suggested, whether or not service be made; he does not supplant any authorized official nor does he conduct the prosecution of the proceeding; he merely collects and furnishes to the proper official, in this instance the county attorney, the result of his investigation to the end that such officer may prosecute; he stands merely in the position of a prosecuting witness. (*Runge* v. *Glerum*, above.)

As the order to show cause is the jurisdictional process of the court, it is manifest that the statute contemplates and requires service thereof and, under the statute, no hearing can be had and no order made until service is had; nothing "may be done" under it other than that which was done and, in this respect, the statute is constitutional.

3. Counsel further contends that the notice here required ▇▇ is not "reasonable" and, therefore, is violative of the "due process" provision. In support of this contention he cites *Roller* v. *Holly*, 176 U. S. 398, 44 L. Ed. 520, 20 Sup. Ct.

Rep. 410, in which he says the court held unconstitutional a statute which provided for five days' notice after service in which to make appearance. However, the statute there considered had to do with service on a nonresident of the state of Texas in proceedings to foreclose liens; in the particular case such service of process, issued out of a Texas court, was made upon a resident of Virginia and it clearly appeared that four days would be consumed in actual travel from the point of service to the place of hearing, without considering the danger of accidental delays. Without attempting to say what might be reasonable notice, even to a nonresident, under different circumstances, the court merely stated that "a man is entitled to some notice before he can be deprived of his liberty or property" and "it is manifest that the requirement of notice would be of no value whatever unless such notice was reasonable and adequate for the purpose," and held that "under the circumstances of this case, and considering the distance between the place of service and the place of return," the notice was not reasonable and, therefore, not "due process of law."

The requirement of "reasonable notice" means but notice suitable to the case. (*Commonwealth* v. *Central Dist. Telephone Co.*, 243 Pa. 586, 90 Atl. 338; *McCall Co.* v. *Jacobson*, 139 Mich. 455, 102 N. W. 969.)

There can be no question but that, in the ordinary case of this nature, a five to ten day notice given a local resident would be "reasonable"; it is the usual time fixed in orders to show cause and the only requirement in this state as to notice for the abatement of any nuisance is that the notice be reasonable. (Sec. 8656, Rev. Codes 1921.)

It has been suggested, however, that, as the statute requires the party served to appear "not less than five nor more than ten days from the *date* of the order," service might be held up until the day set for the hearing and thus the owner be accorded practically no notice of the hearing. Conceding that no such sharp practice was indulged in, counsel would again invoke the rule that "it is not what has been done, but what

490

may be done" under a statute that condemns it. We are of the opinion that the rule cannot be here applied.

With the date of hearing set ten days after the *date* of the order to show cause, it might be possible, under the statute, to so long withhold service as to accord an owner little or no time for preparation for the hearing, but the legislative intent, as gleaned from the statute, is that in every such case at least a reasonable notice should be given and "the intention of the lawmaker constitutes the law." (*Jones* v. *New York G. & I. Co.*, 101 U. S. 622, 25 L. Ed. 1030.)

We think the correct rule for adoption here is, as stated in *Barth* v. *Pock*, 51 Mont. 418, 155 Pac. 282: "It is the rule in this state, and generally for that matter, that no one will be heard to question the validity of a statute unless his interests have been, or are about to be, prejudicially affected by the operation of the statute."

The two rules announced above,—the one, that "no one will be heard to question the validity of a statute unless his interests have been, or are about to be, prejudicially affected by the operation of the statute," the other, that "the constitutional validity of a law is to be tested, not by what has been done under it, but by what may be done under it," are, apparently, in conflict and have caused some confusion; both are well established in this jurisdiction. The first has, since the decision in *Barth* v. *Pock*, above, been repeated and adhered to in *Pohl* v. *Chicago, M. & St. P. Ry. Co.*, 52 Mont. 572, 160 Pac. 515; *Hill* v. *Rae*, 52 Mont. 378, Ann. Cas. 1917E, 210, L. R. A. 1917A, 495, 158 Pac. 826; *Thomas* v. *City of Missoula*, 70 Mont. 478, 226 Pac. 213; *State* v. *Johnson*, 75 Mont. 240, 243 Pac. 1073; *State* v. *Vettere*, 77 Mont. 66, 249 Pac. 666; *State ex rel. City of Wolf Point* v. *McFarlan*, 78 Mont. 156, 252 Pac. 805. The second was announced in *State ex rel. Holliday* v. *O'Leary*, 43 Mont. 157, 115 Pac. 204, being taken from Lewis' Sutherland on Statutory Construction, sec. 107. There the text is supported by the single case of *Minneapolis Brewing Co.* v. *McGillivary* (C. C.), 104 Fed. 258. The rule as announced in the *Holliday Case* has been followed in *State*

*ex rel. Redman* v. *Meyers*, 65 Mont. 124, 210 Pac. 1064; *Chicago etc. Ry. Co.* v. *Railroad Commissioners*, above, and in *State* v. *Sunburst Refining Co.*, 73 Mont. 68, 235 Pac. 428.

On a careful reading of all of the above cases and outside authorities to the same effect, we are convinced that the apparent conflict in the two rules is but seeming and not real. The first rule is applicable, and has been applied, in those cases wherein the party seeking to challenge the validity of a statute is in a situation wherein he could not have been affected by the alleged unconstitutionality of the statute. As illustrative of the application of this rule, if, in the case of *Roller* v. *Holly*, above, the defendant had been a resident of the city in which the hearing there considered was to be held, he could not have challenged the validity of the statute there in question on the ground that a like notice served upon a resident of a distant state would not have been ''due process of law,'' although as to one in a class different from that in which the party falls, the statute might be held void. (*New York ex rel. Hutch* v. *Reardon*, 204 U. S. 152, 9 Ann. Cas. 736, 51 L. Ed. 415, 27 Sup. Ct. Rep. 188; *Potter* v. *Furnish*, 46 Mont. 391, 128 Pac. 542.)

On the other hand, the second rule is applicable to all of those cases wherein by strict compliance with the statute the party raising the question of the validity of the statute could have been deprived of due process of law; it then becomes immaterial that, as a matter of fact, what would be ''due process'' had been accorded. This rule is aptly illustrated by the situation disclosed in the opinion in *Chicago, M. & St. P. Ry. Co.* v. *Railroad Commissioners*, above.

The Act in question is constitutionally valid as against each of the attacks here made upon it.

4. It is finally contended that the evidence adduced is insufficient to justify the decision of the trial court and that, by reason of the fact that a space of approximately forty feet intervened between this building and the dwelling to the north and the one to the south of it, ''the physical facts

'themselves negative the contention" that the building is "a fire hazard."

We are given no measuring stick for the determination of what is a fire hazard other than the definition of a "public nuisance" found in the statute itself, as above given. The word "hazard" as here used, means "risk, danger, peril" (Webster), and, under the statute, it is not necessary that the danger or risk of fire be immediate in order that the building shall constitute a public nuisance, but only that it be so conditioned and so situated that it be "especially liable to fire," and that, if it should burn, it would endanger other buildings or property.

Several witnesses testified that, by reason of its dilapidated condition, loosened siding, curled shingles, decaying beams, being without a substantial foundation, with openings in the roof and debris inside, this building was especially liable to fire from outside causes, spontaneous combustion from damp and decay, vandals entering and lighting matches, mice and rats coming in contact with matches left in the building, and the like, and that, if it did burn, by reason of its condition, sparks, burning shingles and material were likely to be carried much farther than the nearest buildings. It is true that the defendant introduced testimony to the contrary, but this but raised a conflict in the evidence which was resolved by the court in favor of the relator. Expert evidence was adduced to the effect that the building was so far gone to ruin and decay that it could not be repaired, and, on this testimony the court found that it could not be repaired.

Conceding that the law in question is drastic and that the destruction of property should only be ordered as a last resort for the protection of surrounding property; that where repairs can lawfully be made so as to eliminate the special danger of fire, such repairs should be ordered rather than the destruction of the building (*State Fire Marshal* v. *Fitzpatrick*, 149 Minn. 203, 183 N. W. 141; *York* v. *Hargadine*, above), and that such a statute as this should be administered with caution and for the purpose of fire protection alone, not to promote

"the city beautiful idea" (*Jackson* v. *Bell*, 143 Tenn. 452, 226 S. W. 207), we cannot overthrow a judgment based upon a preponderance of the substantial evidence following the wording of the statute, even though we may suspect that the real purpose of the proceeding is to relieve the neighbors of a local "eye-sore," or be inclined to believe, with witnesses for the defense, that the building is no greater a fire hazard than it would be if repaired.

According to the preponderance of the evidence this building was a fire hazard, within the meaning of the statute and of the city ordinance quoted, long prior to the time it was partially destroyed by fire; yet no attempt was ever made by the owner to secure permission from the city, in accordance with the ordinance, to repair it and no showing was attempted to be made to the effect that such a permit could be obtained. No showing was made as to the value of the building or the cost of repair, other than the nonexpert testimony of the defendant. When asked: "Would you say it was damaged as much as 33⅓ per cent of its value?" he replied, "No, I would not," and this testimony was but in conflict with the expert testimony mentioned above, the conflict being resolved against the defendant.

On the record we find the judgment supported by substantial evidence and it must be affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.

Rehearing denied May 2, 1929.