STATE ex rel. KERN et al., Relators, v. ARNOLD, Mayor, et al., Respondents.

(No. 7,455.)

(Submitted June 26, 1935.   Decided July 5, 1935.)

[49 Pac. (2d) 976.]

*Mr. Walter L. Pope* and *Mr. Russell E. Smith*, for Relators, submitted a brief and argued the cause orally.

348

352

*Mr. Ralph L. Arnold* and *Mr. Donovan Worden,* for Respondents, submitted a brief and argued the cause orally.

*Mr. Warren Toole* and *Mr. George S. Smith, Amici Curiae,* argued the cause orally.

On motion for rehearing, *Mr. Harry Meyer, Messrs. Speer & Hoffman, Messrs. Toomey & McFarland, Mr. John W. Chapman,* and *Mr. J. B. C. Knight, Amici Curiae,* and representing, respectively, the Butte, Helena, Great Falls and Anaconda Associations of Firemen, submitted briefs.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Relators, individually and as members of the fire department of the city of Missoula, brought this action as an original proceeding in this court, seeking a writ of mandate to compel the mayor and councilmen of the city to comply with the provisions of Chapter 49 of the Laws of 1935.

It is alleged in the petition that the city of Missoula was incorporated under the laws of the territory of Montana as a municipal corporation in 1889; that it has a population in excess of 10,000, and less than 25,000, and is operating under the commission form of government; that the respondents are, respectively, the mayor and councilmen of the city of Missoula; that the personnel of the city fire department is composed of the relators;

that the fire department is divided into two platoons, pursuant to the provisions of Chapter 91 of the Laws of 1917 and Acts supplementary thereto; that eight of the members of the fire department are receiving a salary of less than $150 per month; that the respondents have refused to obey the provisions of Chapter 49, supra, and have announced that they will continue to maintain the two-platoon system and require the relators to work in excess of 8 hours per day; and will continue to refuse to pay those members of the fire department the sum of $1,800 per year, who are now receiving a lesser sum.

The pertinent portion of Chapter 49, Laws of 1935, provides: "On and after July 1st, 1935, in cities of the first and second classes, the City Council, City Commission, or other governing body, shall divide all members of the paid Fire Department, except the chief thereof, into platoons of three shifts.   The members of each shift shall not be required to work or be on duty more than eight (8) hours of each consecutive twenty-four hours, except in the event of a conflagration or other similar emergency when such members or any of them may be required to serve so long as the necessity therefor exists.   Each shift shall be changed once every two weeks.   (Each member shall be entitled to at least one (1) day off duty out of each eight-day period of service without loss of compensation.)   No member of a paid Fire Department of a city of the first or second class shall engage in any occupation of any other kind whatsoever. Members of paid Fire Departments of cities of the first class shall each receive a minimum salary of Eighteen Hundred Dollars ($1,800.00) per annum, payable in equal monthly installments.   Members of paid Fire Departments of cities of the second class shall suffer no reduction in salary on account of the operation of this Act, provided that this Act shall not be operative as to cities of the second class unless the City Council, City Commission or other governmental body thereof shall by ordinance adopt same."   (Sec. 1.)

The respondents have appeared by motion to quash and by answer.   The motion to quash is based upon the ground that the

petition fails to state facts sufficient to constitute a cause of action. The answer admits the facts detailed, supra. It is also alleged that Chapter 49 violates certain constitutional provisions, which we will presently notice so far as may be necessary.

The first question presented is whether a city in owning and ██ operating a fire department is exercising a governmental or proprietary function. By the provisions of section 5039 of the Revised Codes of 1921, as amended by Chapter 20 of the Laws of 1927, the following powers, among others, are granted to the city or town council: "27. To establish a fire department, and prescribe and regulate its duties; to maintain a fire alarm and police telegraph. 28. To erect engine, hose, and hook-and-ladder houses, and provide engines and other implements for the extinguishment of fire. 29. To inspect chimneys, flues, fire places, stove pipes, ruins, structures, and boilers, and, when dangerous, to require the same to be removed or put in order, and prohibit the use thereof until safe."

By the provisions of section 5109 it is declared that the council of cities and towns "shall have power to establish a fire department, and prescribe and regulate its duties," and to provide equipment for the extinguishing of fires. Section 5110 provides the method of selecting firemen, the fixing of their salaries by ordinance, and that the firemen, including the chief and assistant chief, "shall not be deemed officers of the municipal corporation in which such fire department is established."

In the case of *State ex rel. City of Missoula* v. *Holmes*, ante, p. 256, 47 Pac. (2d) 624, speaking with reference to the powers of cities, we said: "The powers granted to a municipal corporation are of two classes. 'The first including those which are legislative, public, or governmental and import sovereignty; The second are those which are proprietary, or quasi private, conferred for the private advantage of the inhabitants and of the city itself as a legal person.' (*Campbell* v. *City of Helena*, 92 Mont. 366, 16 Pac. (2d) 1, 2; *State ex rel. Brooks* v. *Cook*, 84 Mont. 478, 276 Pac. 958; *Griffith* v. *City of Butte*, 72 Mont. 552, 234 Pac. 829; *Milligan* v. *City of Miles City*, 51 Mont. 374, 153 Pac. 276, L. R. A. 1916C, 395.) * * * In the case of

*Hersey* v. *Neilson,* supra [47 Mont. 132, 131 Pac. 30, Ann. Cas. 1914C, 963], this court, speaking with reference to the power of the legislature over municipal corporations, said: 'Because of its autonomous character—its enjoyment of a large measure of organic independence—the municipal corporation is relieved to a considerable extent from officious, meddlesome legislation which seeks to interfere with its private or proprietary functions. The theory of local self-government for municipal corporations is firmly established in this state. (*Helena Con. Water Co.* v. *Steele,* 20 Mont. 1, 49 Pac. 382, 37 L. R. A. 412; *State ex rel. Gerry* v. *Edwards,* 42 Mont. 135, 111 Pac. 734, Ann. Cas. 1912A, 1063, 32 L. R. A. (n. s.) 1078.)' As to the first class of powers of a city enumerated above, the power of the legislature is supreme except as limited by express constitutional prohibitions; but as to the powers of the second class wherein the city is acting in a proprietary capacity, as distinguished from a governmental capacity, the theory of local government controls.''

If in owning the equipment and property used in a fire department and in employing firemen the city is acting in its proprietary capacity, then the Act in question, which of necessity requires the city to employ additional firemen at additional expense and to pay others additional compensation, operates to deprive the city of property without due process of law in contravention of the provisions of section 27 of Article III of the Constitution. If, on the other hand, when engaged in these activities the city is exercising a governmental function, the will of the legislature is supreme. (*State ex rel. City of Missoula* v. *Holmes,* supra.)

In behalf of relators it is contended that the case of *State ex rel. Brooks* v. *Cook,* 84 Mont. 478, 276 Pac. 958, is decisive of this question. It was there said that maintenance of fire protection is within governmental functions as applied to cities. The precise question there under consideration was whether, on the order of the state fire marshal as against the owner, the removal of a dilapidated building especially liable to fire, was a valid police regulation. The validity of the Act was sustained. In enforcing a statute or ordinance valid as an exercise of the police

power, a city is of necessity acting in behalf of the sovereign state and performing a governmental function.

It is argued that by the great weight of authority a fire department maintained by a municipal corporation is classified as the exercising of a governmental function in cases where it was sought to hold the municipality liable for failure to secure proper equipment to extinguish fires and to maintain an adequate water supply for that purpose, and where it was sought to hold the city responsible for the negligence of firemen in the operation and use of equipment while attempting to extinguish fires, or in testing apparatus maintained for that purpose.

The authorities are practically unanimous in holding that a city may not be held liable for damages in tort actions of the character indicated, and are collected in the notes in 9 A. L. R. 143, 33 A. L. R. 688 and 84 A. L. R. 514. All of them agree that in the circumstances considered in these various cases the city may not be held responsible in damages. Those courts, however, have based their conclusions upon varying reasons.

An examination of the initial cases in various jurisdictions which have passed on the question of the liability of a city reveals the reasons impelling the conclusions attained other than the axiomatic statement of nonliability; they may well be classified as follows: (1) The city is required by the legislature to establish and maintain a fire department.. (*Greenwood* v. *Louisville,* 13 Bush (Ky.), 226, 227, 26 Am. Rep. 263; *Wild* v. *Paterson,* 47 N. J. L. 406, 1 Atl. 490.) (2) Powers conferred upon municipalities are public in their nature and they are but the instrumentalities of the state. (*Black* v. *Columbia,* 19 S. C. 412, 45 Am. Rep. 785.) (3) If the city is not bound to furnish a facility, that ends all question of liability for failure to furnish it. (*Vanhorn* v. *Des Moines,* 63 Iowa, 447, 19 N. W. 293, 50 Am. Rep. 750; *Boyd* v. *Insurance Patrol,* 113 Pa. 269, 6 Atl. 536.) (4) Firemen in performing their duties are public officers and not agents of the city. (*Burrill* v. *Augusta,* 78 Me. 118, 3 Atl. 177, 57 Am. Rep. 788; *Heller* v. *Mayor etc. of Sedalia,* 53 Mo. 159, 14 Am. Rep. 444; *Dodge* v. *Granger,* 17 R. I. 664, 24 Atl. 100, 33 Am. St. Rep. 901, 15 L. R. A. 781.) (5) The city re-

ceives no compensation for the use of a fire department which is maintained by taxation for the benefit of the city. (*Mafford* v. *New Bedford,* 16 Gray (Mass.), 297; *Brink* v. *Grand Rapids,* 144 Mich. 472, 108 N. W. 430; *Welsh* v. *Rutland,* 56 Vt. 228, 48 Am. Rep. 762; *Hayes* v. *Oshkosh,* 33 Wis. 314, 14 Am. Rep. 760.) (6) Considerations of a sound public policy, which would relieve municipal corporations from the disadvantages and embarrassments of responsibility for those inevitable miscarriages which attend the performance of duties at once so difficult, so urgent, and so important. (*Long* v. *Birmingham,* 161 Ala. 427, 49 So. 881, 18 Ann. Cas. 507; *Wilcox* v. *Chicago,* 107 Ill. 334, 47 Am. Rep. 434; *Brinkmeyer* v. *Evansville,* 29 Ind. 187; *Foster* v. *Water Co.,* 3 Lea (Tenn.), 42; *Mendel* v. *Wheeling,* 28 W. Va. 233, 57 Am. Rep. 664.)

In the case of *Wilcox* v. *Chicago,* supra, speaking on the ground of public policy, it was said: "If liable for neglect in this case, the city must be held liable for every neglect of that department, and every employee connected with it, when acting within the line of duty. It would subject the city to the opinions of witnesses and jurors whether sufficient dispatch was used in reaching the fire after the alarm was given; whether the employees had used the requisite skill for its extinguishment; whether a sufficient force had been provided to secure safety; whether the city had provided proper engines and other appliances to answer the demands of the hazards of fire in the city; and many other things might be named that would form the subject of legal controversy. To permit recoveries to be had for all such and other acts would virtually render the city an insurer of every person's property within the limits of its jurisdiction. It would assuredly become too burthensome to be borne by the people of any large city, where loss by fire is annually counted by the hundreds of thousands, if not by the millions. When the excitement is over and calm reason assumes its sway, it may appear to many where other methods could have been adopted to stay destruction, that appear plausible as theories, and their utter fallacy cannot be demonstrated by any actual

test. To allow recoveries for the negligence of the fire department would almost certainly subject property holders to as great, if not greater, burthens than are suffered from the damages from fire. Sound public policy would forbid it, if it was not prohibited by authority.''

The rule of nonliability of the city in tort does not apply to every act of its fire department, as the construction and maintenance of a door of a fire station (*Walters* v. *Carthage,* 36 S. D. 11, 153 N. W. 881) ; repairing an electric fire alarm system (*Wagner* v. *Portland,* 40 Or. 389, 60 Pac. 985, 67 Pac. 300) ; or maintaining a fire station (*Bowden* v. *Kansas City,* 69 Kan. 587, 77 Pac. 573, 105 Am. St. Rep. 187, 1 Ann. Cas. 955, 66 L. R. A. 181), although in the two latter jurisdictions the courts have subsequently adopted the rule of nonliability of the city for the negligent acts of firemen in going to fires or in extinguishing them, without limiting the effect of their former decisions. (*Barcus* v. *Coffeyville,* 129 Kan. 238, 282 Pac. 698; *Johnston* v. *City of Grants Pass,* 120 Or. 364, 251 Pac. 713, 252 Pac. 1118.) The question has not arisen before the Dakota court.

It is urged that if we hold that members of a fire department are exercising governmental functions when proceeding to fires, engaged in the extinguishment of fires, testing equipment of the department, etc., then we may not distinguish other acts as being proprietary or ministerial in character. The difficulty is no greater than determining when the acts of the agent are those of the principal, or when the acts of an employee create liability on the part of the employer. Courts are confronted with the difficulty of distinguishing between proprietary and governmental activities, as such, and have been put to all sorts of expedients. The fact that the determination of the problem may be difficult does not render it incapable of solution.

As pointed out, supra, this state, along with the courts of some others, has adhered to the theory of local self-government, or home rule, which has had the effect of classifying the functions of a municipal corporation as being proprietary to a greater degree than has been observed by the courts of other

jurisdictions not applying this rule. In general, in those states which have applied the theory of local self-government to the same extent as we have, it is held that Acts of the legislature attempting to fix the amount of compensation to be paid firemen, to direct the levy of a compulsory tax for a firemen's pension fund, and attempts to regulate the hours of employment of firemen which would not be valid as an exercise of the police power, are an undue invasion of the rights of the municipalities on the theory that the establishment and maintenance of a fire department is a proprietary function. (*City of Lexington* v. *Thompson*, 113 Ky. 540, 68 S. W. 477, 101 Am. St. Rep. 361, 57 L. R. A. 775; *Campbell* v. *Board*, 235 Ky. 383, 31 S. W. (2d) 620; *City of Evansville* v. *State*, 118 Ind. 426, 21 N. E. 267, 4 L. R. A. 93; *State ex rel. Geake* v. *Fox*, 158 Ind. 126, 63 N. E. 19, 56 L. R. A. 893; *Davidson* v. *Hine*, 151 Mich. 294, 115 N. W. 246, 123 Am. St. Rep. 267, 14 Ann. Cas. 352, 15 L. R. A. (n. s.) 575; *Simpson* v. *Paddock*, 195 Mich. 581, 161 N. W. 898.)

As disclosed by our statutes, the establishment of a fire department is voluntary on the part of the city, and likewise it is there declared that the firemen are not officers of the city. The apparatus and equipment used by a fire department are the property of the city. The greater portion of the time of firemen when on duty is devoted to holding themselves in readiness to answer a call if the necessity arises, and during such waiting periods they are not exercising any function on behalf of the city, but rather the city is exercising its proprietary right over their time.

It is argued that we are not permitted to make the foregoing assertion, since no allegation of facts to support it are found in the pleadings, and that we are thereby unduly extending our powers of judicial notice beyond the scope of section 10532, Revised Codes 1921. No attempt was made in the pleadings to meet or enumerate any or all of the duties performed by the members of the fire department; therefore, unless recourse is had to our powers of judicial notice, we would be un-

able to determine whether the members of the fire department are performing governmental or proprietary functions.

In 15 R. C. L. 1057, it is written: "It may be stated generally with regard to the question as to what matters are properly of judicial cognizance that, while the power of judicial notice is to be exercised with caution, courts should take notice of whatever is or ought to be generally known, within the limits of their jurisdiction, for justice does not require that courts profess to be more ignorant than the rest of mankind."

As to the value of precedents in cases of this kind, Professor Wigmore, in the second edition of his work on Evidence, section 2580, makes the following observation: "Applying the general principle (ante, section 2565), especially in regard to the element of notoriousness, courts are found noticing, from time to time, a varied array of unquestionable facts, ranging throughout the data of commerce, industry, history, and natural science. It is unprofitable, as well as impracticable, to seek to connect them by generalities and distinctions; for the notoriousness of a truth varies much with differences of period and of place. It is even erroneous, in many if not in most instances, to regard them as precedents. It is the spirit and example of the rulings, rather than their precise tenor, that is to be useful in guidance."

The truth of our statement, supra, is well known by every resident of a municipality maintaining a paid fire department, and therefore properly within the realm of judicial knowledge.

We conclude that a city operates a fire department in its proprietary capacity, except when the fire department is engaged in the extinguishment of fires, going to and from the scenes of such conflagrations, or in testing equipment for use on such occasions, etc.; then it may be said on the ground of public policy based largely upon grounds of necessity, as demonstrated by the quotation, supra, from the case of *Wilcox* v. *Chicago*, supra, that it is exercising governmental functions.

If the legislature had made it compulsory on cities of the first and second class to maintain a fire department, then legislation

such as here under consideration would not be subject to some of the existing constitutional objections.

Therefore, when the legislature attempts to set up a compulsory three-platoon system and dictates the compensation to be paid by the municipality to the firemen so employed, the proprietary rights of the city are invaded in a manner which cannot be justified under the police power of the state, and on the authority of *State ex rel. City of Missoula* v. *Holmes,* supra, it is deprived of its property without due process of law.

Accordingly, we must hold that the Act in question is unconstitutional and void.

The petition is dismissed and the writ denied.

ASSOCIATE JUSTICES MATTHEWS, STEWART and MORRIS concur.

MR. CHIEF JUSTICE SANDS, absent on account of illness, takes no part in the foregoing decision.

Rehearing denied October 7, 1935.